**SMITH PROTECTIVE SERVICES, Relator,**

**v.**

**The Honorable Harlan MARTIN, Judge, 192nd District Court of Dallas County, Texas, Respondent.**

**No. 05–86–00054–CV.**

Court of Appeals of Texas, Dallas.

April 17, 1986.

R. Jack Ayres, Jr., Dallas, for Smith Protective Services.

Samuel B. Paternostro, Dallas, for Mark Smith.

F. Dean Armstrong, Dallas, for Andrew L. Smith.

Before AKIN, GUILLOT and HOWELL, JJ.

GUILLOT, Justice.

This is an original proceeding in which relator, Smith Protective Services, requests:

(1) a writ of prohibition against The Honorable Harlan Martin prohibiting him from entering a partial summary judgment in favor of Andrew Smith and from taking any further action to hear any issues in Cause No. 84–3652;

(2) a writ of mandamus against Judge Martin commanding him to vacate his "Order Overruling Plea to Jurisdiction" of March 28, 1985; his "Pre-Trial Order" of April 18, 1985; his "Order on Pleas to the Jurisdiction, Pleas on Abatement, Motions to Consolidate and Scheduling" of December 11, 1985; his "Order Concerning Motions for Summary Judgment"; and "any other order entered by the trial court after July 2, 1984"; and

(3) a writ of prohibition against Judge Martin preventing relitigation of the final judgment of March 19, 1984 in Cause No. 84–3652 against Andrew Smith. For the reasons below, we deny relator's petition for writs of prohibition and mandamus.

## BACKGROUND OF THE PROCEEDINGS

In order to understand the posture of the case, we must outline the history of the proceedings below.

In 1980, relator filed an action in Cause No. 80–4872 in the 162nd District Court of Dallas County, Texas, against John and Janice Cimaglia regarding their alleged misuse of a trade name similar to relator's. Cause No. 80–4872 will sometimes hereinafter be referred to as the 1980 case.

On October 31, 1983, relator filed its first amended original petition in the 1980 case adding Andrew L. Smith, (hereinafter "Andrew"), as an additional defendant. In the amended petition, relator alleged that Andrew breached fiduciary duties to relator by: (1) conspiring with the Cimaglias to misappropriate the trade name of relator; (2) misappropriating corporate assets and opportunities; and (3) attempting to solicit relator's employees for other employment. Andrew did not file an answer.

A default judgment hearing was conducted on January 13, 1984. An "Interlocutory Order" signed on that date by the 162nd District Court granted relator damages and permanent injunctive relief against Andrew. The judgment further decreed "... that the claims of Smith Protective Services, Inc. against Andrew L. Smith, III herein be and are hereby severed from the remaining claim." (We interpret this language to sever all claims of SPS against Andrew from the remaining claim of SPS against the Cimaglias.) Andrew filed a motion for new trial on February 10, 1984, in the 1980 case.

The 162nd District Court conducted a hearing on February 10, 1984, at the request of Andrew's counsel which hearing was attended by counsel for both relator and Andrew. The trial court on March 19, 1984, entered a "Nunc Pro Tunc Order Granting Interlocutory Default Judgment and of Severance" in the 1980 case in favor of relator against Andrew for damages and injunctive relief. The nunc pro tunc order provides in part:

IT IS FURTHER ORDERED that this default judgment shall be and is interlocutory in character and shall remain so, pending further order of the Court.

IT IS FURTHER ORDERED that the district Clerk of Dallas County, Texas, shall forthwith assign a separate cause number to the case entitled *Smith Protective Services, Inc. v. Andrew L. Smith, III*, and that all issues referable to such severed claims shall be docketed to appear under the caption of *Smith Protective Services, Inc. v. Andrew L. Smith, III.*

Also on March 19, 1984, the trial court signed an "Order Concerning Filing of Motion for New Trial" in the 1980 case, which

order stated that the motion for new trial filed in the original lawsuit:

... shall be and is hereby considered to have been filed in a timely and diligent fashion in severed Cause *84–3652*, styled *Smith Protective Services, Inc. v. Andrew L. Smith, III* and that the Defendant Andrew L. Smith shall suffer no prejudice nor be considered to have engaged in any delay in this connection.

A new file jacket was prepared for Cause No. 84–3652, styled "Smith Protective Services v. Andrew L. Smith," and copies of the "Nunc Pro Tunc Order Granting Interlocutory Default Judgment and of Severance" and the "Order Concerning Filing of Motion for New Trial" were filed in the new jacket with the 80–4872 cause number crossed out and Cause No. 84–3652 written in. Andrew never requested a hearing on his motion for new trial in either the 1980 case or the 1984 case.

In March of 1984, Andrew mistakenly appealed Cause No. 80–4872 by filing a cash bond only in the 1980 case. Although Andrew argued that he had perfected appeal of both the "Interlocutory Order" (the 1980 case) and "Nunc Pro Tunc Order" (the 1984 case), the Eastland Court of Appeals dismissed the case holding that the judgment appealed from was interlocutory in the 1980 case, and there was no appeal before them from the severed claims in the 1984 case.

Meanwhile, Andrew still had not filed an answer in the 1980 case, and, after relator reached a settlement with the Cimaglias, there was another default hearing on October 8, 1984, for the remaining causes of action against Andrew that relator claimed were not severed. Respondent, the Honorable Harlan Martin, sitting for the 162nd District Court, presided in the default hearing and granted a final judgment signed on November 26, 1984. The final judgment in Cause No. 80–4872 stated:

Defendant Andrew L. Smith, III, having previously made an appearance in this cause pertaining to the unsevered claims, and, although duly notified of trial setting by and through his attorney of record, wholly failed to appear either in person or through any representative and made default ...

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff SMITH PROTECTIVE SERVICES, INC., have and recover from the Defendant ANDREW L. SMITH, III, actual damages in the amount of ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($150,000.00).

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this judgment shall bear interest at the rate of 10.84% per annum until paid and further that Plaintiff shall have all costs of Court from the Defendant ANDREW L. SMITH, III, only, and all other such relief not expressly granted herein is denied, all for which let execution issue.

Subsequently, Andrew filed a timely motion for new trial, which was granted, and the 1980 case was nonsuited.

Thereafter, on January 28, 1985, Andrew filed in the 1984 case, Cause No. 84–3652 in the 162nd District Court, Defendant's "Original Answer and Defendant's Original Counterclaim for Appointment of a Receiver to Rehabilitate a Corporation." On February 11, 1985, Relator filed a plea to the jurisdiction of the court stating that the trial court had lost jurisdiction of the cause. On March 26, 1985, the 162nd District Court entered an order overruling the plea to the jurisdiction. On March 29, 1985, Andrew filed a motion to transfer and the court granted the motion, transferring the cause to the 192nd District Court.

On April 4, 1985, Andrew filed Defendant's "Motion to Set Aside and Vacate Interlocutory Order." On April 11, 1985, relator filed "Plaintiff's Response to Defendant's Motion to Set Aside and Vacate Interlocutory Order," and a "Motion for Reconsideration of Order Overruling Plaintiff's Plea to the Jurisdiction and, alternatively, Motion to Abate Proceedings." On April 18, 1985, the 192nd District Court entered its pre-trial order granting Andrew's motions and denying relator's motion for reconsideration. The trial court, however,

abated further proceedings pending filing of mandamus proceedings in the court of appeals.

Relator then filed his first "Motion for Leave to File a Petition for a Writ of Mandamus and Writ of Prohibition" in this court. We refused to issue a writ of mandamus or writ of prohibition because relator failed to show both that it had a clear right to relief and that it had no other adequate remedy to rectify the wrong.

While relator's petition for mandamus was pending before this Court, Andrew filed a new lawsuit, Cause No. 85–7367, styled *Andrew L. Smith v. Clayton J. Smith,* which was transferred to the 192nd District Court. Andrew sought damages and injunctive relief to prevent Clayton from voting his shares of stock at a meeting for shareholders of relator. As a result of Clayton's plea in abatement for joinder of necessary parties, the 192nd District Court directed that Andrew sever his damage claims from his injunctive relief claims and join relator, Mark Smith, and Coralie Smith as defendants to the injunctive relief claims. The resulting severed cause of action was Cause No. 85–7915, styled *Andrew L. Smith v. Clayton J. Smith, et al.*

Judge Martin conducted a pre-trial conference for matters in the 1984 case and both of the 1985 causes of action. Judge Martin requested that the parties consolidate both of the 1985 causes of action into the 1984 case and that each party replead to consolidate their pleadings in order to set a schedule for trial in the consolidated cases. In compliance with Judge Martin's request, Andrew filed in the 1984 case his amended counterclaim, his third-party action against Clayton Smith, and a motion for partial summary judgment which was scheduled for a hearing commencing on January 10, 1986. On January 15, 1986, Judge Martin sent a letter to counsel for the parties informing them that he was going to grant a partial summary judgment to Andrew. The effect of this partial summary judgment is to terminate Clayton's stock ownership in SPS. On January 17, 1986, relator filed its motion for leave to file the present petitions for writs of prohibition and mandamus.

## RELATOR'S CONTENTION

Although the recitation of the procedural background presents a quagmire, when we distill relator's issues and arguments to their essence, the basic contention is that the nunc pro tunc order in Cause No. 84–3652 (the 1984 case) was a final order which was never appealed. Therefore, relator contends, the trial court has no authority to set it aside, to consolidate other causes into it, to overrule pleas to the jurisdiction or pleas in abatement, to relitigate issues in it, or to grant a partial summary judgment in it. Therefore, relator contends, the writs of prohibition and mandamus should issue. Respondent replies that, because the nunc pro tunc order in Cause No. 84–3652 is not a final judgment, all the proceedings now pending in that cause are proper.

## DETERMINATION OF THE FINALITY OF THE NUNC PRO TUNC JUDGMENT

Because the thrust of relator's requests for extraordinary relief is based on the contention that the nunc pro tunc order of March 19, 1984 is a final judgment, we will first determine the finality of that judgment. To begin to determine the finality of the nunc pro tunc order of March 19, 1984, we must first look at the entire contents of the order and, if the language is plain and unambiguous, we interpret the order as it was written. *Bankers Home Bldg. & Loan Association v. Wyatt,* 139 Tex. 173, 162 S.W.2d 694, 695 (Tex.Comm'n App. 1942, opinion adopted). The heading or title of the order states: "Nunc Pro Tunc Order Granting Interlocutory Default Judgment and of Severance." That language is clear; it indicates that the order is interlocutory, not final. But examining the body of the order, we find that not only was an interlocutory default judgment for damages rendered, but also a permanent injunction imposed on Andrew. Then, af-

ter reciting the terms of the permanent injunction, the order states:

> IT IS FURTHER ORDERED that this default judgment shall be and is interlocutory in character and shall remain so, *pending further order of the Court.* (emphasis added).

> IT IS FURTHER ORDERED that the District Clerk of Dallas County, Texas, shall forthwith assign a separate cause number to the case entitled *Smith Protective Services, Inc. v. Andrew L. Smith III* and that all issues referable to such severed claim shall be docketed to appear under the caption of *Smith Protective Services, Inc. v. Andrew L. Smith, III.*

> SIGNED NUNC PRO TUNC this 19 day of March, 1984.

> _____
> Dee Brown Walker, Judge

No further order of the court was entered to make the judgment final.

Because the order appears to be both interlocutory and final, it is ambiguous. Consequently, we must look not only to the order but also to the record to determine the question of finality. *Cf. Lone Star Cement v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971) (where judgment was held to be ambiguous, court looked to entire contents of judgment and record).

Normally, when one or more issues are severed from a pending cause of action, either new pleadings are filed in the new cause number or former pleadings are copied, renumbered, and filed in the new cause number. Unfortunately, neither was done in this case. We must assume that the judge intended that the pleadings referrable to SPS against Andrew in Cause No. 80–4872 be transferred to Cause No. 84–3652 when he ordered that "all issues referable to such severed claims shall be docketed to appear under the caption of *Smith Protective Services, Inc. v. Andrew L. Smith, III.*" Looking at the pleadings in the 1980 cause number, we find that relator alleged three causes of action against Andrew Smith:

1) Andrew breached fiduciary duties to relator by conspiring to misappropriate a trade name of Smith Protective Services (SPS);

2) Andrew breached fiduciary duties by misappropriating corporate assets and opportunities; and

3) Andrew breached fiduciary duties by attempting to solicit relator's employees for other employment.

We hold that all the claims of relator against Andrew contained in the pleadings in Cause No. 80–4872 were severed into Cause No. 84–3652.

Relator contends that only two of the issues between Andrew and it were severed because the nunc pro tunc order adjudicated only two of the claims against Andrew. Relator further contends that, because the severed order disposes of those two issues, it is a final order. It cites the court to summary judgment cases involving severance, *viz., Cherokee Water Company v. Ross,* 698 S.W.2d 363, 364, 365 (Tex.1985); and *Teer v. Duddleston,* 664 S.W.2d 702, 703 (Tex.1984). But whether a judgment is rendered in summary proceedings, by default, or after trial on the merits, the controlling rule is that, for a judgment to be final, it must dispose of all the issues and parties in order to determine and settle the controversy in that cause. *Hunt Oil Company v. Moore,* 639 S.W.2d 459, 460 (Tex.1982); and *MacNelly v. Cameron County,* 590 S.W.2d 182, 184 (Tex.Civ. App.—Corpus Christi 1979, no writ). In the instant case, all three issues between the parties were ordered to be severed by the nunc pro tunc order of March 19, 1984. Relator admits that only two issues were disposed of by the order. Therefore, we hold that the nunc pro tunc order is not a final judgment.

## DETERMINATION OF WHETHER TO GRANT EXTRAORDINARY RELIEF

Relator bases its contention that it is entitled to extraordinary relief on the premise that the nunc pro tunc order is a final judgment. We have held that it is not. That is one basis for denying relief.

Relator must satisfy the two-prong test for issuing writs of mandamus and prohibition. It must show that (1) it has a clear right to relief, and (2) it has no adequate legal remedy to rectify the alleged wrong. *Fulton v. Finch,* 162 Tex. 351, 346 S.W.2d 823, 829 (1961); and *King v. Payne,* 156 Tex. 105, 292 S.W.2d 331, 336 (1956). The gist of relator's motions below and of its contentions in this court is that the nunc pro tunc order is res judicata to the proceedings now pending in Cause No. 84–3652. Relator can file a plea of res judicata below and appeal an adverse ruling. This Court has no power to issue a writ of prohibition which in effect would sustain a plea of res judicata. *H.E. Butt Grocery Company v. Logue,* 370 S.W.2d 418, 418–19 (Tex.Civ.App.—Waco 1963, no writ). Nor can this Court issue a writ of mandamus to vacate interlocutory orders when there is an adequate remedy at law. *See Smith v. Grievance Committee, State Bar of Texas for Dist. 14–A,* 475 S.W.2d 396, 399 (Tex.Civ.App.—Corpus Christi 1972, no writ). For the further reason that relator has not shown that it possesses a clear right to relief and that it has no adequate relief by way of appeal, we decline to issue the writs.

The dissent asserts that our interpretation of the 1984 order robs it of any logical meaning. This is an assertion which is not grounded in the law of conspiracy or of severance. As pointed out, the court must look to the pleadings to see what issues were severed. Because no new pleadings were filed in the 1984 case, we look to pleadings in the 1980 case to determine what claims against Andrew were severed. Pared to their essentials, they were the conspiracy to misappropriate the trade name, the misappropriation of corporate assets, and the breach of fiduciary duty in soliciting SPS's employees.

The default judgment against Smith entered January 13, 1984 did not adjudicate the conspiracy claim. However, the interlocutory order of March 19, 1984 severed "all issues" referable to the case of *SPS v. Andrew Smith III* into the 1984 cause number. This would include the conspiracy claim. It is not necessarily illogical for relator's conspiracy claim against Andrew to be severed from relator's conspiracy claim against the Cimaglias. The liability of conspirators is joint and several. *Mims v. Bohn,* 536 S.W.2d 568, 570 (Tex.Civ.App.—Dallas 1976, no writ). Thus, suit may be maintained against one without joining all other conspirators. *C. Hayman Construction Co. v. American Indemnity Co.,* 473 S.W.2d 62, 70 (Tex.Civ.App.—Dallas 1971, no writ).

The dissent also asserts that *Philbrook v. Berry,* 683 S.W.2d 378 (Tex.1985) is controlling as to whether we should issue a writ of mandamus. But in *Philbrook* all claims against the defendant were determined before they were severed. Here only two of three claims against Andrew were final before severance. Thus the default judgment against him was interlocutory, not final. Hence, relator has an adequate remedy at law in a plea of *res judicata* to any issues previously determined in that pending suit.

Moreover, the dissent asserts that, because the trial court considered the motion for new trial filed in the 1980 case as if filed in the 1984 case, the 1984 case had to be a final judgment. In *Philbrook,* the trial judge considered a motion for new trial filed in the original suit as if it had been filed in the severed cause. The supreme court held that a motion for new trial must be filed in the same cause as the judgment it assails. *Id.,* at 379. Hence, the court's order considering the motion for new trial to be filed in the 1984 case is a nullity and cannot support the dissent's interpretation that the 1984 order was a final one.

In reviewing the record before us, we have determined that the nunc pro tunc order of March 1984 is interlocutory. Relator has shown no right to extraordinary relief. Therefore, the trial court retains jurisdiction over the 1984 consolidated cause of action.

Writs denied.

HOWELL, J., files a concurring opinion.

AKIN, J., files a dissenting opinion.

HOWELL, Justice, concurring.

I am unable to fully subscribe to the reasoning of either of my colleagues. I am of the opinion that there was no effectual severance. It follows that there has been no final judgment and that we should deny all relief. I join in the result proposed by my colleague, Justice Guillot, but not the reasoning.

The majority (slip. op. 679–680) and the dissent (slip op. 684) both take the position that the determinative issue is whether a judgment was entered not later than March 19, 1984 which disposed of all issues contained within the "severed" cause, number 84–3, 652. The writer agrees that the outcome of the matter before us turns upon the construction of the January 13 and March 19 instruments. Having agreed on this predicate, the opinions of my colleagues lapse into a dichotomy whether or not Andrew's joint and several liability upon the conspiracy claim was severed from the parent cause. The writer would avoid the discourse entirely.

The key to this opinion is the fact that neither of my fellow justices can present reasoning of sufficient force to sway the other. The explanation lies in the fact that the documents in question are so inherently obscure that they defy construction with any assurance of correctness. Even if we expanded this panel to ten or a hundred judges, a goodly number would join the position of each of my learned colleagues. In final analysis, the document must be construed as much by fiat as by interpretation.

This writer proposes an entirely different tack. The writer would hold that there is no effectual means to determine with precision which claims were placed within which cause. On this basis, the writer would hold that the severance was ineffectual—void, if you choose, and that no final judgment resulted.

The orders of January 13 and March 19, 1984 are quite similar,[1] the major change

1. Following is the full text of these orders, omitting only the caption and signature. That language which appeared in the January 13 order but not the March 19 order has been bracketed. That language which appeared in the March 19 order but not the January 13 order has been italicized. Underscoring from the originals has been disregarded.

[JUDGMENT INTERLOCUTORY ORDER] NUNC PRO TUNC ORDER GRANTING INTERLOCUTORY DEFAULT JUDGMENT AND OF SEVERANCE

On [this] *the* 13th day of January, 1984, came on to be heard the above-styled cause and the Plaintiff, Smith Protective Services, Inc. appeared by and through their attorney of record. Defendant, Andrew L. Smith, III. although duly served with process, failed to appear or answer herein. The citation, with the officer's return thereon, has been on file with the Clerk of this Court for ten (10) days exclusive of the date of filing and of this date, and the Court finds that the Defendant, Andrew L. Smith, III. although duly served with notice and citation, has wholly failed to enter his appearance herein and wholly made default; and this Court having considered the pleadings, evidence, and argument of counsel, finds that the Plaintiff, Smith Protective Services, Inc. as the moving party is entitled to judgment against *the* Defendant, Andrew L.

Smith, III, and it is the opinion of the Court that the Plaintiff, Smith Protective Services, Inc. should have and recover against the Defendant, Andrew L. Smith, III. in conformity with the pleadings and evidence herein.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the ownership of Smith Protective Services, Inc. is vested in the following individuals by virtue of their ownership of the following shares of stock as indicated:

| Name | No. of Shares Owned | Certificate No. |
|---|---|---|
| Clayton L. Smith | 339,300 | 09 |
| Mark L. Smith | 339,300 | 005 & 008 |
| Coralie C. Smith | 282,100 | 002 |
| [Andrew L. Smith | 339,300 | 003 & 006] |

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Smith Protective Services, Inc. do and have and recovered from Defendant, Andrew L. Smith, III. actual damages in the amount of *TWO HUNDRED SEVENTY-SIX THOUSAND DOLLARS (* $276,000.00*)* ;

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that *the* Plaintiff, Smith Protective Services, Inc. have and recover from the Defendant, Andrew L. Smith, III. [its] exemplary damages in the amount of *FIVE HUNDRED THOUSAND DOLLARS (* $500,000.00*)* ;

being the omission in March of any reference to stock ownership by Andrew L. Smith. As drafted, the January 13 order was simply entitled "JUDGMENT", but the title of "Interlocutory Order" was substituted in a hand which is very similar to the trial court's signature. At the same time, all of the language of that instrument bespeaks a final judgment, including the final provision "that Plaintiff have execution hereon." Nevertheless, on March 19, 1984, the January order could not have reached a stage of finality where the trial court had no jurisdiction to set it aside. This is so because of the filing of a timely motion for new trial.

Virtually all of the language of the January 13 instrument was repeated in the March 19 instrument. The basics of good legal draftmanship would have required that the March 19 instrument explicitly state if the January 13 instrument were being wholly set aside and if the March 19 instrument were being substituted therefor, but the inference is compelling. This writer would hold that on March 19, the January 13 order was nullified and that it passed out of the case.

By marking out the title to the January order, the trial court equivocated as to finality. By the March order, the equivocation became extreme. If a severance occurred, it was necessarily accomplished by the March order because the January order was no longer extant. However, the March order does not decree a severance; it merely assumes a severance. The title recites an "... ORDER ... OF SEVERANCE", but the body of the instrument contains no decretal language whatever. The final paragraph does not command or decree a severance; it infers one.

It is easy to glean from the order an intent on the part of the trial court to sever some part of the parent cause into the subsidiary. The absence of clear and direct language to the effect that some part of the whole "be and is hereby severed into a

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant, Andrew L. Smith, III. is hereby permanently enjoined from:
1. Going around or about the premises or offices of Smith Protective Services, Inc.;
2. Calling, telephone calling, harassing or engaging in any other communication with any of the employees of Smith Protective Services, Inc.;
3. From soliciting or attempting to solicit employees of Smith Protective Services, Inc.;
4. Expending any further funds for or on behalf of Smith Protective Services, Inc. in any form or fashion, including but not limited to, credit card expenditures;
5. Acting on behalf of Smith Protective Services, Inc. or representing that he has any authority to act for or on behalf of Smith Protective Services, Inc. or to bind Smith Protective Services, Inc. in any capacity.
6. That *the* Defendant, Andrew L. Smith, III. return to Smith Protective Services, Inc. all proprietary information relating to the alarm systems, including but not limited to engineer specifications, prototypes, and any other matter of *and* materials relating thereof, including all copies of such information;
7. That Andrew L. Smith, III. return all property of Smith Protective Services, Inc. including credit cards, automobiles, telephone and recording equipment, and other business property belonging to Smith Protective Services, Inc.;

8. That Andrew L. Smith, III. not reveal or disclose any of the proprietary or confidential information received while acting as officer, director or attorney for Smith Protective Services, Inc. relating to the conduct of business operations of Smith Protective Services, Inc. and all proprietary information relating to the alarm systems including but not limited to all engineering specifications, prototypes and other matters and materials thereto, [exempt or] *except as* authorized by law.
[IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the claims of Smith Protective Services, Inc. against Andrew L. Smith, III. herein be and are hereby severed from the remaining claim.]
[IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff, Smith Protective Services, Inc. recover of from the Defendant, Andrew L. Smith, III. their costs expended and that Plaintiff have execution hereon.]
*IT IS FURTHER ORDERED that this default judgment shall be and is interlocutory in character and shall remain so, pending further order of the court.*
*IT IS FURTHER ORDERED that the District Clerk of Dallas County, Texas shall forthwith assign a separate cause number to the case entitled Smith Protective Services, Inc. v. Andrew L. Smith, III. and that all issues referable to such severed claim shall be docketed to appear under the caption of Smith Protective Services, Inc. v. Andrew L. Smith, III.*
SIGNED *NUNC PRO TUNC* THIS [13] *19* DAY OF [JANUARY,] *MARCH,* 1984.

separate and independent cause of action" would not be of consequence if the Court had specified that part of the action it intended to sever. Lacking both specificity and decretal language, the severance failed. No final judgment ensued. The whole case against Andrew remains pending in the trial court.

The approach taken in this opinion can be justified on several counts. First, severances are not to be favored. The Courts, both trial and appellate, have a surfeit of lawsuits without needless subdivision of the cases already on file. Severances should only be granted when severance will clearly advance the real objective, the expeditious resolution of the overall litigation. Obviously, the attempted severance now before us has failed the primary objective of all severances.

One of the commonest motivations impelling litigants to ask for severances is to obtain a final default when there are multiple defendants and one or more has answered but another has not. Again, the policy of the law disfavors piecemeal defaults. Otherwise, the severance device would be wholly unnecessary. The "only one single judgment" rule is a creature of the courts, a deeclaration of procedural policy. The courts have wide, almost unlimited power to revise procedure and often do so by fiat. When the policy against piecemeal judgments ceases to exist, it will be a simple matter to revise the rules of procedure to permit final judgments against defaulting co-defendants, all in the same action. While "severance to obtain default" has been recognized, it should also be identified as the exception and contrary to the general rule declaring that defaulting co-defendants will not be finally dealt with until the case against the answering defendants has been dealt with. It follows that the courts should resolve all intendments against a party seeking severance for default.

The writer would further point out that ambiguity in severance orders is a recurrent problem for the courts, both trial and appellate. "The line drawn should be bright and clear ..." to avoid the contingency that parties and claims be shunted from one part of a severed action to the other and protect a litigant from exposure to "procedural traps" affecting his right to a determination of his claims upon their merits. *See England v. Louisiana State Bd. of Med. Exam.*, 375 U.S. 411, 418, 84 S.Ct. 461, 466, 11 L.Ed.2d 440 (1964).

Our Supreme Court has held:

[T]his court [has] stated that in a conventional trial regularly set for trial on the merits, it will be presumed that the court intended to dispose of all parties legally before it as well as all of the issues made by the pleadings.... That rule is correct and sound when applied to conventional trials on the merits with all parties cited and before the court.

There is no presumption in partial summary judgments that the judgment was intended to make an adjudication about all parties and issues.

*Teer v. Duddlesten*, 664 S.W.2d 702, 704 (Tex.1984).

The reasoning of *Teer* is plain. When a summary judgment fails to clearly express itself as to what has and has not been decided, a presumption against finality is preferable because it leaves the matter within the jurisdiction of the trial court. It retains the power to deal, not only with the omitted matter, but with the whole case. The rights of the parties are not exposed to the contingency that the right of appeal will be cut off before a party apprehends that a final judgment has been entered.

The identical reasoning should be applied to severances, at least to those whose primary objective is to obtain a final judgment with respect to some aspect of the litigation. Where the severance is ambiguous as to what part of the action has been retained in the main case and what part has been transferred into the subsidiary, it better suits the objectives of the law to hold the severance ineffectual. Every aspect of the litigation remains in the main action; nothing is final; the trial court retains the power to sort out the ambiguity in a manner consistent with the ends of justice.

This approach is consonant with the established law on default judgments. No presumptions are exercised in favor of a default judgment. Unless the default be taken strictly in conformity with the law, it will be set aside in its entirety if timely attacked. The case must proceed as if the default were never entered. The same rule should be applied to severances, at least those whose primary objective is to make an otherwise interlocutory judgment into a final one.

It is common for a moving party to tender to the trial court a proposed form of order. This is particularly true when a party moves for a default. We do not know whether the plaintiff in this case tendered the January or the March order here in issue or both of them. To explore the matter would be a needless inquiry. Whether or not plaintiff tendered the particular orders, plaintiff was the movant for severance and the party to be benefitted. Plaintiff was the only party present when the orders were signed and plaintiff should be burdened to object, to point out ambiguities and to request of the Court a clear and explicit order of severance. The only way for the courts to ever assure the objective of clear and explicit severance orders is to visit the consequences upon the moving party. It is unarguable that this plaintiff has not secured from the trial court a severance order free from harmful ambiguity. It follows that plaintiff must be deprived of the benefit which plaintiff sought to reap from severance.

I concur in result only. I would hold the attempted severance void. I would hold that no final judgment ensued, that the whole case against Andrew L. Smith, III remains before the trial court, and that all relief sought by relator should be denied.

AKIN, Justice, dissenting.

The majority holds that the order in the 1984 case is not final and that, even if it were, Smith Protective Services would not be entitled to the writ of mandamus it seeks because it has not demonstrated that it has no other adequate remedy at law.

Because I disagree with both of these conclusions, I must dissent.

I agree with the majority's characterization of the determinative issue in this case: was the judgment in the 1984 case a "final" judgment? I further agree that the order entered was ambiguous as to its finality and that we must consequently look to "the *entire* contents of [the] judgment and *record*." P. 679 (emphasis added). I note, however, that instead of looking at the entire record, the majority contents itself with comparing the pleadings to the order entered. Based upon this review, the majority concludes that one portion of the order, that severing all claims against Andrew Smith, is apparently *not* ambiguous and therefore holds that all three causes of action were severed into the 1984 case. Because the judgment in the 1984 case disposed of only two issues, the majority concludes it cannot be a final judgment. This would be irretutable logic, were it not for one fallacious assumption. The order of 1984 is ambiguous as to exactly what causes were severed, and we must look beyond the pleadings, to the *entire* record, to resolve that ambiguity.

Initially, I believe the state of the documents should be clarified. The 1984 nunc pro tunc judgment, called an "Interlocutory Judgment", was undeniably interlocutory in fact in one case—the 1980 case. But the same judgment exists in both the 1980 and the 1984 case, and its title is completely irrelevant in determining its meaning in the 1984 case. The order was originally entered in the 1980 case and sought to sever out a part of the case, thereby creating the 1984 case. The exact same document, the nunc pro tunc "Interlocutory Judgment", was filed in both cases. As to the 1980 case it clearly is interlocutory because it serves merely to sever part of that cause out of the 1980 case. But as to the 1984 case, its nature is ambiguous. Doubtless the better practice would have been to draft a new and clearer judgment to be entered in the 1984 case. While it is unfortunate that this procedure was not fol-

lowed, the failure to do so should not affect our analysis of the record in this case.

Next, I look at the entire record in order to determine the finality of the 1984 order in the 1984 case. It is uncontested that the amended pleadings in the 1980 case state three causes of action against Andrew Smith. Of these, two concern only the actions of Andrew Smith, and one concerns an alleged conspiracy between the Cimaglias and Andrew Smith. The conspiracy action against Andrew Smith would not logically be severed from the remainder of the conspiracy action against the Cimaglias. Thus, a possible interpretation of the 1984 order in which "the claims of Smith Protective Services, Inc. against Andrew L. Smith III ... [were] severed from the remaining claim" is that Smith Protective Services's claims against *only* Andrew Smith were to be severed, while the claims against the Cimaglias and Andrew Smith for conspiracy remained in the 1980 case. This interpretation is supported by the record. The statement of facts upon which the 1984 default judgment was based contained absolutely no evidence regarding the conspiracy allegations. Also, the relief granted in the 1984 judgment related only to Smith Protective Services's claims that Andrew breached his fiduciary obligations by misappropriating corporate assets and opportunities and by attempting to solicit Smith Protective Services's employees for other employment. No relief was granted which related to any damages associated with the conspiracy allegations until judgment against Andrew Smith was rendered in the 1980 case. Furthermore, at a hearing before the court on February 10, 1984, the court explained that the judgment was interlocutory because the new severed cause had not yet been created and assigned a number. The attorney for Andrew Smith expressed a desire to have it clearly made final so that there would be no problems with his motion for new trial and his appeal. The judge agreed. This exchange supports an interpretation that the judgment was intended to be final once the severed cause had been established in the court records. Finally, on the same day

that the nunc pro tunc "Interlocutory Order" was signed, March 19, 1984, an order concerning filing of motion for new trial was also signed. That order made it clear that Andrew Smith's motion for new trial was considered to be filed in the severed cause of action, although no cause number had, at that time, been assigned to that case. Regardless of its legal effect, this document concerning the motion for new trial provides further support for my interpretation that the nunc pro tunc "Interlocutory Order" was intended to be final in the 1984 case.

In contrast, the majority's interpretation of the 1984 nunc pro tunc "Interlocutory Order" robs it, and the other documents and proceedings I have referred to, of any logical meaning or purpose. Under the majority opinion, the 1984 order would not result in a logical severance of unrelated causes of action from the conspiracy allegations. Further, it would not render a part of the court's determinations final so that the motion for new trial and proceedings associated with it would have meaning. Indeed, the majority opinion renders a court order devoid of meaning—a result I decline to reach.

Consequently, upon a review of the entire record, I conclude that the 1984 judgment was intended to be, and was in fact, final as to the two causes of action concerning only the actions of Andrew Smith as defendant. The issue concerning the alleged conspiracy between Andrew Smith and the Cimaglias was intended to remain in the 1980 case, as demonstrated by the default judgment in that case rendered on November 26, 1984, against Andrew Smith and disposing of all claims against the Cimaglias.

The majority further concludes that, regardless of whether the 1984 judgment was final in the 1984 case, Smith Protective Services has failed to demonstrate that it has no other adequate legal remedy to rectify the wrong. I disagree. The majority asserts that even if the 1984 judgment was final, Smith Protective Services may plead res judicata in the current proceedings and,

if the trial court fails to sustain that plea, can reassert it on appeal. But the supreme court has recently granted a writ of mandamus to require a trial court to vacate its order granting a new trial when the default judgment in that cause had become final. *Philbrook v. Berry,* 683 S.W.2d 378, 379 (Tex.1985). Similarly, in this case, the court lost jurisdiction over the causes of action in the 1984 case thirty days after the 1984 final judgment was entered. The judge thereupon lost all power to continue to litigate, or relitigate, those issues. No new case has been instituted, granting jurisdiction to the trial judge, to which cause the defendant attempts to plead res judicata as a defense. Rather, the trial judge here has lost jurisdiction, as in *Philbrook.* I would grant the writ of mandamus.