**Opinion issued March 1, 2016**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-14-00305-CV

—————————————

### ROBERT HOVEL AND TANIA HOVEL, Appellants

### V.

### GAL BATZRI, Appellee

**On Appeal from the 234th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-43259A**

## O P I N I O N

This is a statutory-construction case. Robert and Tania Hovel sued a limited liability company, 7677 Real Property LLC, for breach of contract and DTPA violations. After suit was filed but before any determination of liability was made,

the company stopped paying its franchise tax and forfeited its corporate privileges. Eventually, the Hovels obtained a default judgment against the company.

The Hovels then sought to have the sole manager of the company, Gal Batzri, held personally liable for the company's debt under Section 171.255 of the Texas Tax Code. That statute charges corporate directors and officers with personal liability for business debts "created or incurred" after the business fails to pay its franchise tax and before any subsequent revival of corporate privileges. TEX. TAX CODE ANN. § 171.255 (West 2015).

The sole manager and the Hovels filed cross motions for summary judgment. The trial court granted the manager's motion and denied the Hovels'. In two issues, the Hovels contend that the trial court erred in concluding that the manager was not personally liable.

Recognizing that Section 171.255 is penal in nature and that our established precedent requires that any ambiguity in a penal statute be interpreted in favor of the party facing the penalty, we hold that, in the context of a contract between a plaintiff and entity-defendant that leads to contractual, statutory, and tort claims against the entity-defendant, the debt is created or incurred when the events giving rise to the claim occurred. Using this construction of the phrase "created or incurred," we hold that, under Section 171.255 of the Tax Code, judgment-debts arising from or related to pre-forfeiture agreements and pre-forfeiture acts are

2

considered to have been created or incurred pre-forfeiture even if not liquidated until post-forfeiture, whether the claims are expressed solely as contract claims or a combination of contract, statutory and tort claims. Because the Hovels' claims relate to their contract with 7677, it is uncontested that the contract was executed pre-forfeiture, and the breach, tortious conduct, and injury occurred pre-forfeiture, we affirm.

## Background

The Hovels contracted with 7677 to build a custom home. 7677 is a Texas limited liability company with a single member and manager: Gal Batzri. The Hovels became dissatisfied, alleging that 7677 was in breach of the construction contract by delivering the home late and with construction defects. The Hovels sued 7677.[1] They asserted numerous causes of action, including breach of contract, violation of the DTPA, and statutory fraud. They also alleged that 7677 misrepresented that it would timely perform the contract and follow applicable construction standards.

The Hovels sought as expectation damages the difference between the contract price and the actual value of the property they received. They also sought consequential damages, reliance damages, mental-anguish damages, and other

---

[1]    By the time the Hovels sued 7677, their business relationship had ended; all that was left was for their unliquidated claim to be judicially reduced to a liquidated damages award.

3

damages under the DTPA, as well as attorney's fees and costs. TEX. BUS. & COM. CODE ANN. § 17.50(b)(1), (d) (West 2011).

While the suit was pending, 7677 forfeited its charter and corporate privileges by failing to pay its franchise tax. During the period of forfeiture, the Hovels obtained a default judgment against 7677.[2] The trial court awarded lump-sum actual-damages of $2,067,166.50, without specifying on which of the Hovels' multiple legal theories the damages were awarded. A few months after the default judgment, 7677 revived its charter and corporate privileges.

Post-default, the Hovels brought this lawsuit, seeking to hold Batzri personally liable for the judgment against 7677 under Tax Code section 171.255, which imposes personal liability akin to a general partnership for "each debt of the [entity] that is created or incurred" between the date that a company forfeits its corporate privileges and the date that it revives them.[3] TEX. TAX CODE ANN.

---

[2]  The Hovels' suit included other defendants. The Hovels' claims against 7677 were resolved in their favor by the $2 million default judgment. Their claims against the other defendants were subsequently tried to a jury and resulted in a judgment of less than $250,000. Those defendants pointed to 7677, in its absence, as the liable party. The jury's findings are not legally relevant to the prior default judgment against 7677.

[3]  Throughout this opinion, we use "forfeiture" as shorthand for the earliest date after which the statute begins imposing personal liability for debts thereafter created or incurred. Many courts have made use of this shorthand, as we do, for readability. *See, e.g.*, *McKinney v. Anderson*, 734 S.W.2d 173, 174 (Tex. App.—Houston [1st Dist.] 1987, no writ); *River Oaks Shopping Ctr. v. Pagan*, 712 S.W.2d 190, 192 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Rogers v. Adler*, 696 S.W.2d 674, 675 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). But it is technically

§ 171.255(a). Both parties moved for summary judgment. The trial court denied the Hovels' motion and granted Batzri's motion, apparently concluding that the debt was not "created or incurred" by the default judgment, which was the only event that occurred during the period of forfeiture. The Hovels timely appealed.

## Standard of Review

We review a summary judgment de novo. TEX. R. CIV. P. 166a; *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Summary judgment is proper if, having viewed all of the evidence in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). If a trial court grants summary judgment without specifying the grounds for doing so, as is the case here, we must uphold the trial court's judgment if any ground relied upon by the movant is meritorious. *Parker v. Valerus Compression Servs., LP*, 365 S.W.3d 61, 65 (Tex. App.—Houston [1st Dist.] 2011, pet. denied).

We also review issues of statutory construction de novo. *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Our

---

imprecise. Although the statute only applies if corporate privileges are *forfeited*, it imposes personal liability for any debt created or incurred "after the date on which the report, tax, or penalty is due," which is usually a short time *before* actual forfeiture. *See* TEX. TAX CODE ANN. §§ 171.251–.257 (West 2015). This lag in time has no bearing on this case because all of the material acts and omissions occurred before both dates and the default judgment issued after both dates.

primary objective in construing statutes is to give effect to the Legislature's intent.

*Id.*

## Section 171.255

Section 171.255 of the Tax Code penalizes directors and officers of a corporation for knowingly creating or incurring debt in the name of the corporation while its corporate privileges are in forfeiture.[4] The relevant portion of that section reads:

> (a) If the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in this state after the date on which the report, tax, or penalty is due and before the corporate privileges are revived. The liability includes liability for any tax or penalty imposed by this chapter on the corporation that becomes due and payable after the date of the forfeiture.
>
> (b) The liability of a director or officer is in the same manner and to the same extent as if the director or officer were a partner and the corporation were a partnership.
>
> (c) A director or officer is not liable for a debt of the corporation if the director or officer shows that the debt was created or incurred:
>
> > (1) over the director's objection; or
> >
> > (2) without the director's knowledge and that the exercise of reasonable diligence to become acquainted with the affairs of the corporation would not have revealed the intention to create the debt.

---

[4] In addition, the failure to pay the required taxes results in a 5% penalty due to the State. TEX. TAX CODE ANN. § 171.362(a) (West 2015).

TEX. TAX CODE ANN. § 171.255(a)–(c).[5] The statute applies to limited liability companies, such as 7677. *See id.* § 171.2515 (West 2015); *see also Bruce v. Freeman Decorating Servs., Inc.*, No. 14-10-00611-CV, 2011 WL 3585619 (Tex. App.—Houston [14th Dist.] Aug. 16, 2011, pet. denied) (mem. op.).

Both parties agree that Batzri—7677's sole member and manager—is personally liable for any debt created or incurred during forfeiture of 7677's corporate privileges and that the Hovels obtained a default judgment against 7677 during that period. But the parties dispute whether 7677's debt was created or incurred when the default judgment was entered or when the tortious or otherwise wrongful conduct occurred that ultimately led to the Hovels' judgment against 7677.

Relying, in part, on a narrow definition of "debt" adopted by the Legislature in 1987, the Hovels argue that a debt does not come into existence until it is liquidated, their damages remained unliquidated until they obtained the default judgment, and therefore, no debt was created or incurred until the default judgment issued during the forfeiture. Conversely, Batzri argues that the 1987 narrow

---

[5]    Subsection (b) holds officers and directors individually liable, as if they were partners in a general partnership, for the entity's debts created or incurred *after* the forfeiture. The statute assigns such liability prospectively; it does not look back in time to assign individual liability for acts that occurred pre-forfeiture—while the corporate form still existed—as a form of punishment. In our view, this provision does not support the dissent's conclusion that the statute is intended to punish officers of tortious entities by reaching back in time to impose individual liability for actions that occurred *before* forfeiture. Dissent, slip op. at 17, 23, 53–59.

definition of "debt" is no longer significant because the legislation enacting it has been repealed. He argues for a broad definition of "debt" that includes unliquidated obligations and contends that 7677's debt was created or incurred when the acts or omissions that gave rise to the Hovels' claim occurred. According to Batzri, the debt was created or incurred at that time—pre-forfeiture—and the default judgment relates back to that time.

## The Rule of "Strict Construction"

Although the statute imposes civil liability, Section 171.255 of the Tax Code operates as a penal statute. *Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79, 81 (Tex. 1946); *Sheffield v. Nobles*, 378 S.W.2d 391, 392 (Tex. App.—Austin 1964, writ ref'd) (statute is "highly penal in nature and one which could produce great hardship"); *see also* Robert W. Hamilton, *The Corporate Entity*, 49 Tex. L. Rev. 979, 995–96 (1971) (describing individual liability arising from failure to pay franchise taxes as "[d]raconian provision").[6] Because Section 171.255 is a penal statute, we must "strictly construe" any ambiguity in favor of the party penalized by it. *Schwab*, 198 S.W.2d at 81; *see Curry Auto Leasing, Inc. v. Byrd*, 683 S.W.2d 109, 111 (Tex. App.—Dallas 1984, no writ).[7]

---

[6]     The penalty is particularly draconian for an officer or director who may not even have any ownership in the corporate entity.

[7]     This rule functions much like the  rule of lenity. The rule of lenity typically applies in the criminal context. *See* Phillip M. Spector, *The Sentencing Rule of Lenity*, 33

Courts have repeatedly invoked this rule of statutory construction when construing Section 171.255. For example, this court has stated that *Schwab* requires us to strictly construe the statute "to protect individuals against whom recovery of such quasi-penal damages is sought." *McKinney v. Anderson*, 734 S.W.2d 173, 174 (Tex. App.—Houston [1st Dist.] 1987, no writ) (reviewing Section 171.255); *see Tri-State Bldg. Specialties, Inc. v. NCI Bldg. Sys., L.P.*, 184 S.W.3d 242, 251 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("It is well-settled

---

U. TOL. L. REV. 511, 511–12 (2002) ("The rule of lenity counsels that criminal laws should be narrowly interpreted in favor of criminal defendants"). But the rule of strict construction, which applies in the context of a civil penal statute, operates in a similar way as the criminal rule of lenity.

The rule of lenity is "sometimes cast as the idea that '[p]enal statutes must be construed strictly' and sometimes as the idea that, if two rational readings are possible, the one with the less harsh treatment of the defendant prevails." ANTONIN SCALIA & BRYAN GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 296 (2012). The rule "applies not only to crimes but also to civil penalties." *Id.* at 297. *Schwab*, in interpreting the predecessor to Section 171.255, applies the rule without naming it. While rarely applied by Texas courts in criminal statutes, it remains a widely recognized doctrine of statutory construction. *See generally Cuellar v. State*, 70 S.W.3d 815, 821 (Tex. Crim. App. 2002) (Cochran, J., concurring) (rule of lenity requires courts to adopt less harsh interpretation of penal statutes).

As noted by two commentators,

> the rule of lenity is underused in modern judicial decision-making— perhaps the consequence of zeal to smite the wicked. The defendant has almost always done a bad thing, and the instinct to punish the wrongdoer is a strong one. But a fair system of laws requires precision in the definition of offenses and punishments. The less the courts insist on precision, the less the legislatures will take the trouble to provide it.

SCALIA & GARNER, *supra*, at 301.

that section 171.255 must be strictly construed to protect those individuals against whom liability is sought because it is penal in nature . . . .").

More recently, this court reaffirmed strict construction of this penal statute, stating that "we are obliged to interpret section 171.255 and its statutory predecessors as the Texas Supreme Court and this court have, with the recognition that the statute is 'penal in nature,' and therefore must be 'strictly construed' to protect individuals against whom liability is sought." *Willis v. BPMT, LLC*, 471 S.W.3d 27, 33 (Tex. App.—Houston [1st Dist.] 2015, no pet.). We are bound by these precedents from this court.

Under this rule, a penal statute "cannot be extended beyond the clear import of [its] language." *Schwab*, 198 S.W.2d at 81. This rule of construction ensures that (1) corporate officers have fair notice of the risk of personal liability and (2) the harm is proportionate to the penalty. *See Cain v. State*, 882 S.W.2d 515, 519 (Tex. App.—Austin 1994, no writ).

"Strict construction," in the context of construing a penal statute, does not mean that each individual term must be read narrowly. It means that, when a statutory provision is unclear, the statute is read in its entirety in a way that benefits the party facing the possibility of a penalty if a fair reading permits it. *See Coastal States Gas Producing Co. v. Pate*, 309 S.W.2d 828, 831 (Tex. 1958) (stating that strict construction applies by examining operation of law); *cf. Jonnet v.*

*State*, 877 S.W.2d 520, 537 (Tex. App.—Austin 1994, writ denied) (Jones, J., dissenting) ("Under strict construction, it is the operation of the statute as a whole that is restricted, not the meaning of some isolated word or phrase"). Thus, strict construction of the entire statute, as opposed to strict construction of an isolated word, might require that an individual word be read broadly to accomplish a construction in favor of the party facing the penalty. *See Coastal States Gas Producing Co.*, 309 S.W.2d at 831 (stating that "[s]trict construction . . . does not require that the words of a statute be given the narrowest meaning of which they are susceptible"); *see also Curry*, 683 S.W.2d at 111. Accordingly, strict construction does not always equate to a narrow reading of a particular term.[8]

The dissent seems to suggest that strict construction is a mechanism to punish an officer or director for conduct of an on-going corporate entity that occurred while it held its corporate privileges and might be viewed as "wrongful" in a moral sense. Dissent, slip op. at 55–59. We disagree. Its purpose is actually the opposite: "to protect individuals against whom liability is sought." *Willis*, 471 S.W.3d at 33. Neither *Schwab* nor any other authority cited by the dissent employs

---

[8] We disagree with *Cain v. State*, 882 S.W.2d 515, 519 (Tex. App.—Austin 1994, no writ), which held that a strict construction of Section 171.255 requires courts to adopt the strictest possible definition of each statutory term. Indeed, the definitions given for "create" and "incur" in *Schwab v. Schlumberger Well Surveying Corp.*, 198 S.W.2d 79, 81 (Tex. 1946)—which are recited axiomatically in almost every Section 171.255 case—are broad.

11

the rule of strict construction to Section 171.255 to punish pre-forfeiture corporate conduct.

The principle of strict construction applies here as we construe a penal statute that does not clearly state for which debts a director or officer might face individual liability. Section 171.255 speaks only in terms of "debts" "created or incurred" during relevant periods, without defining when a liability is considered a "debt" or at which point debts should be considered "created or incurred."

Our construction is also guided by past interpretations of this statute. In particular, we consider pre-1987 cases deciding that debts were considered created or incurred at the time the relevant contractual obligations were incurred. *Schwab*, 198 S.W.2d at 81. To the extent the debts were unliquidated, they were permitted to relate back to the contractual obligation. *See, e.g.*, *Curry*, 683 S.W.2d at 112. We also consider a shift that occurred in 1987, when the Tax Code was amended to include a narrow definition of "debt," limiting it to a liquidated obligation, and consider how that change has affected the construction of Section 171.255. Finally, we consider the import of the Legislature's action, in 2008, to repeal the "debt" definition. Ultimately, we conclude that the pre-1987 view of this statute, which focused on broadly construing "created" and "incurred" and allowed unliquidated debts to relate back to the contractual obligations from which they arose, controls

12

and the proper construction of Section 171.255 does not permit individual liability for 7677's debt to the Hovels.

### Pre-1987 Era: Applying Strict Construction to Conclude that Post-forfeiture Judgments were Created or Incurred when the Pre-forfeiture Acts Transpired

The rule of strict construction, in the sense of achieving a narrow application of a statute as a whole, was first applied in a forfeiture case in *Schwab*. Analyzing the predecessor statute to Section 171.255, the Texas Supreme Court broadly defined the terms "created" and "incurred" as follows: "'create' means '[t]o bring into existence something which did not exist'" and "incur" means "'[b]rought on,' 'occasioned,' or 'caused.'" *Schwab*, 198 S.W.2d at 81. Utilizing these broad definitions of the terms, the Court treated a contract debt as created or incurred at the time of the original note, not when the note was renewed or defaulted on, both of which occurred post-forfeiture. *See id.* "The giving of a new note for a debt evidenced by a former note does not extinguish the original indebtedness . . . . It remains the same; it is in substance and in fact the same indebtedness evidenced by a new promise." *Id.* at 82. Strict construction of the statute resulted in the officers of the corporation not having personal liability for the entity's debts, consistent with the previously announced view that "before any one should be punished, either in a criminal or a civil action, . . . the offense should be clearly defined" and

13

"doubt as to the intention of the legislature should be resolved in favor of the defendant." *Gulf, C. & S.F. Ry. Co. v. Dwyer*, 19 S.W. 470, 471 (Tex. 1892).

Another approach that courts have applied that is consistent with strict construction—and also consistent with the broad definition of "create or incur" from *Schwab*—is the "relation-back" doctrine. That doctrine was first applied to a Section 171.255 case in *Curry*, which involved a corporation that failed to make lease payments both before and after forfeiting its corporate privileges. *Curry*, 683 S.W.2d at 111. The issue was whether the corporation's debt was created or incurred only after the amount of unpaid rent was capable of calculation, post-forfeiture, or earlier while still unliquidated. *Id.* The Dallas court of appeals held that the obligation to pay the debt arose from the lease contract, even if the exact amount of the deficiency was unknown at that time (i.e., it was unliquidated), because "[n]o argument is made that a sum of money is due [the plaintiff] under a new, different, separate, or independent agreement." *Id.* at 112. Accordingly, "performance or implementation of the contractual provisions relate back to and are authorized at the time of execution of the contract." *Id.*

"Strictly construing" Section 171.255, the court held that the corporate officers were not personally liable because "the obligations, circumstances, conduct, or transactions that create[d] or incur[red] the debt in question pre-existed the forfeiture," even though the debt was, at that point, still unliquidated. *See id.*

14

*Curry*, thus, construed the statute to limit individual liability by applying, for the first time, a "relation-back" doctrine that allowed future liquidated debts to relate back to the execution of the agreement through which damages were owed.

Many intermediate appellate courts have followed *Curry*. For example, in *River Oaks Shopping Center v. Pagan*, 712 S.W.2d 190 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.), our sister court held that "it is clear that the obligation to pay rent was created or incurred at the time the lease agreement was executed," not when it was defaulted on.[9] *Id.* at 192.

This same "relation-back" doctrine was also applied in a tort case. *See Rogers v. Adler*, 696 S.W.2d 674, 677 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). There, the party that obtained a judgment during an entity-defendant's period of forfeiture attempted to impose personal liability by arguing that her tort claim remained unliquidated until it was reduced to a judgment and, therefore, did not meet the statutory requirement of a "created or incurred" debt until the judgment was entered during the period of forfeiture. *Id.* at 677.

---

[9]  As discussed below, the Fourteenth court later determined that *Pagan* was overruled by the Legislature when it added a statutory definition of "debt." *Taylor v. First Cmty. Credit Union*, 316 S.W.3d 863, 868–69 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The Legislature has since deleted the statutory definition. *See* Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex. Gen. Laws 1734, 1735, repealed by Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 24 (effective Jan. 1, 2008).

The appellate court rejected the argument. First, it noted that the plaintiff's suit against the entity alleged four grounds for recovery: fraud in the inducement, breach of contract, breach of fiduciary duty "under the contract," and violation of the Deceptive Trade Practices Act, which the court considered to be "essentially claims based on the contract" even if presented in a manner "sounding in tort." *Id.* at 677. Next, the court noted that all of the operative facts occurred pre-forfeiture. *Id.* Then, the *Rogers* court found that the pre-forfeiture tort that led to a post-forfeiture judgment was "analogous" to the plaintiff's contract claim in *Curry*. *Id.*

The *Rogers* plaintiff's claim arose from the pre-forfeiture contract between the plaintiff and the entity-defendant even if the causes of action asserted by the plaintiff "sound[ed] in tort." *Id.* According to the court, a claim that "sounds in tort" instead of contract is a "distinction . . . without a difference" when the claims relate to the parties' agreement; therefore, "all claims . . . relate back to the contract," even if expressed as fraud and statutory DTPA claims. *Id.* By applying the "relation-back" doctrine, the court held that the contract and tort claims were, in effect, created or incurred pre-forfeiture.[10]

---

[10] Some cases have employed the term "relate back," while others have, in a more general sense, held that the term "created or incurred" is broad enough to include earlier events in the chain of events that led to a post-forfeiture judgment. *Compare Rogers v. Adler*, 696 S.W.2d 674, 677 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (relate back) *to Schwab*, 198 S.W.2d at 81–82 (broad reading of created and incurred). We view the first concept as a proxy for the second. In other words, allowing a judgment to relate back to earlier events is equivalent to

## 1987: The Legislature Enacts a Narrow Definition of "Debt" after which the "Relation-Back" Doctrine is Applied Inconsistently

The Texas Supreme Court has noted that the term "debt" is ambiguous.[11] *See Reconstruction Fin. v. Gossett*, 111 S.W.2d 1066, 1073 (Tex. 1938); *Barber v. City of East Dallas*, 18 S.W. 438, 439 (Tex. 1892). This ambiguity led the Austin court of appeals in 1987 to apply a broad definition of "debt" to include unliquidated obligations. *See State v. Sun Ref. & Mktg., Inc.*, 740 S.W.2d 552 (Tex. App.—Austin 1987, writ denied); *State v. Sun Oil Co. (Del.)*, 740 S.W.2d 556 (Tex. App.—Austin 1987, no writ).

That same year, the Legislature adopted a narrow definition of "debt" within the Tax Code as "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand."[12] Act of May 30, 1987, 70th Leg., R.S., ch. 324, § 1, 1987 Tex.

---

construing "created or incurred" broadly to hold that a claim was created or incurred at the point of the earlier event.

[11] In 1984, the Texas Supreme Court defined "debt" as used in the Probate Code—not the Tax Code—narrowly as a "specified sum of money owing to one person from another, including not only [an] obligation of [a] debtor to pay but [the] right of [a] creditor to receive and enforce payment." *Seay v. Hall*, 677 S.W.2d 19, 23 (Tex. 1984). The Dallas court of appeals considered the *Seay* definition, in 1985, when analyzing Section 171.255, but the court ultimately refused to apply it based on the rule that the statute should be strictly construed. *See Rogers*, 696 S.W.2d at 676.

[12] This definition was added as part of legislation setting forth the computation of franchise taxes. *See Wilburn v. State*, 824 S.W.2d 755, 759 n.7 (Tex. App.—Austin 1992, no writ) (op. on reh'g).

Gen. Laws 1734, 1735, repealed by Act of May 2, 2006, 79th Leg., 3d C.S., ch. 1, § 5, 2006 Tex. Gen. Laws 1, 24 (effective Jan. 1, 2008). This resulted in corporations not being able to deduct from their taxable corporate surplus their contingent and unfixed losses, and thereby resulted in an increase in revenue for the State.

By adding the narrow statutory definition, the term was no longer ambiguous or subject to broad interpretation by the courts:

> The report of the House Ways and Means Committee, the "Fiscal Note" from the director of the Legislative Budget Board, and the bill analysis prepared by the House Research Organization all reflect that the purpose of the amendment was to codify an existing accounting rule of the State Comptroller of Public Accounts that was being challenged in court by various parties. A corporation calculates how much franchise tax it owes based, in part, on the amount of its surplus. The comptroller had adopted an accounting rule prohibiting corporations from deducting from their calculation of surplus any sums set aside by the corporation to provide for contingent or estimated losses. Rather, under the comptroller's rule, only debts of a fixed amount could be used to reduce a corporation's surplus. Several corporations had successfully challenged the validity of the comptroller's rule in court and, although the court rulings were being appealed, the legislature sought to codify the rule in order to protect against a possible revenue shortfall in the event the appeals were unsuccessful. Thus, the legislature added the amendment in order to guarantee that corporations could not, in calculating their franchise taxes, reduce the amount of their surplus by unrealized, estimated, or contingent losses. Rather, as under the comptroller's rule, only debts of a fixed, certain amount would be allowed to reduce surplus.

*Jonnet*, 877 S.W.2d at 536 (Jones, J., dissenting) (citation omitted).

A decade after the narrow "debt" definition was enacted, the Fourteenth court of appeals applied the "relation-back" theory to the phrase "created or

18

incurred." Similar to what had occurred in *Curry* and *Rogers*, the court held that a debt from a negligently performed termite inspection was not "created or incurred" at the time of the default judgment entered against the inspector but, instead, at the earlier time when the inspection was negligently performed. *Ballard v. Quinn*, No. 14-97-01057-CV, 1998 WL 787558, at *2 (Tex. App.—Houston [14th Dist.] Sept. 10, 1998, no pet.) (mem. op., not designated for publication).[13]

Given that the Legislature had defined "debt" narrowly to mean a liquidated obligation, the *Ballard* court concluded that the trial court's default judgment was the "debt." *Id.* However, relying on *Curry*, the court explained that "a determination of what constitutes the 'debt' is only the first step in the analysis. We must next determine when, under the facts and circumstances shown by the record, the obligations evidenced by the debt were 'created' or 'incurred.'" *Id.* To answer that question, the court followed *Rogers* and stated that "the conduct creating the debt occurred when the corporation performed the negligent termite inspection, nearly two years prior to forfeiture of its charter." *Id.*; *cf. McCarroll v. My Sentinel, L.L.C.*, No. 14-08-01171-CV, 2009 WL 4667403, at *3 (Tex. App.—Houston [14th Dist.] Dec. 10, 2009, no pet.) (mem. op.) (stating that "a debt is deemed created or incurred, for section 171.255 purposes, at the time of the event

---

[13]     We recognize, of course, that *Ballard* lacks precedential value. But, as we explain, there are numerous similarities between the *Ballard* case and this one, and we believe the analysis is persuasive.

or events which gave rise to that debt" and rejecting contention that monetary judgment "created" debt). Because the negligent termite inspection occurred nearly two years before the forfeiture of corporate privileges, there was no personal liability for the post-forfeiture judgment debt. *Id.* The broad reading of "created or incurred" allowed a post-forfeiture debt to "relate back" to pre-forfeiture conduct and prevented the 1987 narrow "debt" definition from imposing the penalty of individual liability.

The "relation-back" doctrine was later rejected by the same Fourteenth court of appeals in *Taylor v. First Community Credit Union*, 316 S.W.3d 863 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The *Taylor* case involved breaches of an agreement between the plaintiff and entity-defendant. *Id.* at 865. The party facing individual liability stipulated that the corporate entity breached the agreement post-forfeiture—thereby presenting a different factual scenario than found in *Ballard* or here—but, nevertheless, argued that the post-forfeiture breaches should relate back to the signing of the agreement. *Id.* at 867.

The court discussed the import of the 1987 narrow statutory definition of "debt" implemented by the Legislature and its effect on the often-used "relation-back" doctrine. *Id.* In the court's view, permitting a judgment to relate back to the date of execution of a contract would be the equivalent of concluding that the "debt" was created at that point. *See id.* at 869. But, at that point, "no party had

breached the agreement" and "there was no money owed under the agreement." *Id.* According to the *Taylor* court, to hold that a debt existed when the contract had not been breached and no damages could be measured was irreconcilable with the Legislature's 1987 pronouncement that a "debt" means "any legally enforceable obligation measured in a certain amount of money which must be performed or paid within an ascertainable period of time or on demand." *Id.*

The *Taylor* court concluded that the Legislature must have intended to overrule the use of the "relation-back" doctrine in these Section 171.255 cases when it enacted such a narrow definition of a "debt." *Id.* at 869 (stating that "legislative addition of this definition conflicts with the relation back doctrine" and constituted material change in law after relation-back cases were decided).[14]

### Post-2008: After Repeal, the *Taylor* Basis for Rejecting the "Relation-back" Doctrine is Removed

In 2008, the Legislature repealed its narrow "debt" definition while revising the method of calculating franchise taxes.[15] With that repeal, the "relation-back" doctrine reemerged to avoid individual liability for pre-forfeiture acts that lead to post-forfeiture judgments. For example, in *Rossmann v. Bishop Colorado Retail*

---

[14] The *Taylor* court relied on the 1987 definition even though it had been repealed by that point because all of the material events in the case occurred pre-repeal. *See Taylor*, 316 S.W.3d at 869.

[15] This repeal was part of a series of amendments designed to fund Texas schools by adopting new methods to calculate businesses' tax bills. Senate Research Center, Bill Analysis, Tex. H.B. 3, 79th Leg., 3d C.S. (2006).

*Plaza, L.P.*, 455 S.W.3d 797  (Tex. App.—Dallas 2015, pet. denied), the Dallas court followed the *Curry* approach and held that the date the debt was "created or incurred" was when it "was brought into existence, caused by, resulted from, or arose out of" the transaction in question. *Id.* at 805 (relying on definitions given terms "created" and "incurred" by Texas Supreme Court in *Schwab*); *see Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 26 (Tex. App.—Texarkana 2012, no pet.) (concluding there was no individual liability under Section 171.255 when contract and deficient performance occurred pre-forfeiture and judgment was entered post-forfeiture because "the liability in this case was not created or incurred after the corporate forfeiture"); *see also Willis*, 471 S.W.3d at 33–34 (concluding that debt on lease agreement need not be for sum certain, thus rejecting repealed, narrow "debt" definition in favor of construction that favored party facing penalty).

All of these cases demonstrate application of the rule of strict construction to protect a party facing a penalty through a construction of Section 171.255 in that party's favor. Courts have focused on when a debt was "created or incurred," read those terms broadly, and applied the "relation-back" doctrine to link post-forfeiture judgments to pre-forfeiture conduct and agreements. Cases have used this approach, even when the Legislature mandated that "debt" meant a fully liquidated obligation, by concluding that the debt was the judgment but it was created or

incurred at the time the conduct occurred or contract was executed. *See Rogers*, 696 S.W.2d at 677; *Ballard*, 1998 WL 787558, at \*2.

The exception is *Taylor.* There, the Fourteenth court of appeals rejected the "relation-back" doctrine when it concluded that a statutory requirement that a debt be liquidated is incompatible with a determination that the debt was "created or incurred" at a point it was still unliquidated. *Taylor*, 316 S.W.3d at 869. But, with the repeal of the narrow definition that led to the *Taylor* result, courts have again concluded that a judgment-debt is created or incurred when the conduct or contract occurs,[16] even if, at that point, the obligation remains unliquidated. *See Willis*, 471 S.W.3d at 33–34.

The dissent relies on two cases to argue that the 2008 repeal of the 1987 definition does not allow a reemergence of the "relation-back" theory. First, the dissent relies on *Skrepnek v. Shearson Lehman Bros., Inc.,* to argue that "debt" is

---

[16] We respectfully disagree with the dissent's interpretation of *Energy Service Co. of Bowie, Inc. v. Superior Snubbing Services, Inc.*, 236 S.W.3d 190, 195 (Tex. 2007) in support of its argument that the statute should be interpreted as in *Taylor*. Dissent, slip op. at 42. After quoting the Code Construction Act's provision that courts consider legislative intent, the Court stated that the statute in question—a provision of the Labor Code—should be interpreted consistent with its predecessors. In this case, there are a number of problems with adopting the immediately preceding statutory definition of "debt." First, there were statutory reasons for adding the 1987 definition that no longer applied after the Tax Code was substantially revised. Second, adhering to the narrow 1987 definition would require us to ignore that the  earlier versions of the Tax Code failed to include any definition of "debt" within their provisions. Nothing in *Superior Snubbing Services* directs us to adhere to a narrow definition, imposed briefly by statute and later removed, while ignoring a much longer history of no assigned meaning.

23

incurred on the day of judgment and cannot relate back to the time of the contract. 889 S.W.2d 578 (Tex. App.—Houston [14th Dist.] 1994, no writ). But nothing in that case is inconsistent with applying the "relation-back" theory in interpreting Section 171.255. There, the corporate charter was forfeited "prior to the stock transactions" that formed the basis of the findings for breach of contract and fraud. 889 S.W.2d at 582. The individual officer's only defense was that he did not know of the debt that was created or incurred, admittedly, during forfeiture. *See id.* The court explained, "Skrepnek complains of the sufficiency of the evidence to hold him liable" because he contends "that an officer or director is not liable under § 171.255 *unless the debt was incurred with his knowledge, approval, and consent.*" *Id.* at 581–82 (emphasis added). The court rejected the officer's argument, noting that there was no evidence that he fell within the "safe harbor" provision for officers or directors who object to the debt or did not know of the debt despite reasonable diligence. *See id.* at 582. That is not an issue in this appeal.

Second, the dissent relies on *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415 (Tex. App.—Dallas 2012, no pet.). But that case also is consistent with applying the "relation-back" doctrine. *Id.* at 419. There, the court of appeals held that an officer was not liable for a corporation's failure to pay an annual consulting fee that became due after forfeiture because the debt related back to an employment agreement executed pre-forfeiture. *See id.* at 423. While the holding is

24

consistent with our approach, it does not address the issue we face, which is whether an amount that did not become fixed until a post-forfeiture judgment was created or incurred pre-forfeiture. The *Beesley* court was addressing a different question in a different context.

**The Rule of Strict Construction Leads to Conclusion that**
**7677's Debt was "Created or Incurred" Pre-forfeiture**

With this historical context in mind and recognizing that prior precedent supports applying the rule of strict construction to construe penal statutes, such as this one, in favor of the party against whom individual liability would attach, we consider whether the trial court erred by concluding that 7677's debt was not a debt created or incurred during forfeiture and, as a result, Batzri did not have individual liability under Section 171.255.

We have concluded that the repealed statutory definition is not only no longer binding but, at this point, has become immaterial to our analysis of Section 171.255. *See Willis*, 471 S.W.3d at 33; *Rossmann*, 455 S.W.3d at 804; *see also* READING LAW at 334 ("When a statute is repealed, it falls irretrievably into oblivion," and has no effect).[17] As a result, we are not constrained by the narrow

---

[17]   The dissent asserts that Texas law does not follow the rule that a repealed statute should be treated as inapplicable and, instead, requires us to continue to implement a repealed definition if its repeal was for unrelated reasons. Dissent, slip op. at 41–44. We cannot agree for two reasons. First, Texas law permits a court to consider former versions of a statute, but it does not require it. *Klevenhagen v. Int'l Fid. Ins. Co.*, 861 S.W.2d 13, 17 (Tex. App.—Houston [1st Dist.] 1993, no writ) (citing TEX. GOV'T CODE ANN. § 312.005 (West 2013) and stating "in construing a

25

definition of a "debt" as a liquidated sum certain. Instead, we look to the other pre- and post-repeal cases to analyze when 7677's debt was created or incurred.

That review leads us to note the similarities between the Hovels' claim and the one pursued in *Ballard*. In both cases, the plaintiff had a contract with the entity-defendant, the entity-defendant allegedly breached the agreement, the plaintiff asserted tort-based claims alongside breach-of-contract claims, the entity forfeited its corporate privileges by failing to pay franchise taxes, a judgment was entered against the entity-defendant during the period of forfeiture, and the plaintiff sought to hold an officer or director individually liable under Section 171.255 for that judgment debt.

The *Ballard* court held that individual liability would not attach. Because "all of the operative facts occurred nearly two years before the corporate charter was forfeited" and the "work performed under the agreement had long since been

statute, we *may* consider the common law or former statutory provisions" (emphasis added)). Second, when a definition is repealed for unrelated reasons but its earlier enactment, likewise, was unrelated to the issues or provisions being analyzed, the dissent's justification for continuing to apply a repealed definition loses force. We see no reason to apply a non-binding, repealed definition of "debt" that was added to address non-Section 171.255 revenue purposes and deleted for equally inapplicable purposes. Moreover, our approach is consistent with precedent from our court. *Willis v. BPMT, LLC*, 471 S.W.3d 27, 34 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (noting that statutory definition of debt "has since been repealed, which indicates both that the Legislature no longer required that specific understanding of 'debt' to apply to a case arising under chapter 171, and also that the Legislature would have anticipated that the courts would revert to applying the understanding of 'debt' that prevailed before the statutory definition was enacted.").

completed before corporate privileges were forfeited," "the claims asserted by [the plaintiff] in the underlying suit necessarily related back to and arose out of the contract," regardless if phrased as a simple breach-of-contract claim or a tort-based negligence claim. *Ballard*, 1998 WL 787558, at \*2. "[T]he conduct creating the debt occurred" when the party acted negligently. *Id.* This was not a "debt contracted after the forfeiture." *Id.* Instead, it was an obligation that arose pre-forfeiture, became liquidated post-forfeiture, but related back to the period in time when the conduct occurred. *Id.*

We reach a similar conclusion here. The Hovels entered into a contract to purchase a conforming home. When they determined that the home did not meet the standards promised, they sued under contract, statutory, and tort-based theories. All of the conduct underlying their claim, as well as the agreement, occurred pre-forfeiture. The only occurrence post-forfeiture was entry of the judgment to liquidate the damages claim.

Applying the rule of strict construction and utilizing the Supreme Court's definition of the terms "created" and "incurred" from *Schwab*, we conclude that the debt evidenced by the default judgment obtained by the Hovels against 7677 was created or incurred pre-forfeiture at the time that the parties established their contractual and other obligations and, as such, Batzri is not individually liable for the entity's debt.

27

**Public Policy Supports Broadly Construing "Created or Incurred"**

Finally, even if we were to consider public policy, we would reject the Hovels' contention that this interpretation is misguided. Section 171.255 is designed to support three public-policy goals: first, to motivate corporate officers and directors to ensure that franchise taxes are paid; second, to protect those dealing with the corporation;[18] and third, "to hold those directors and officers liable who 'have abused the corporate privilege by continuing to create and incur debts after the franchise tax is delinquent'" and the corporate privilege is forfeited.[19]

The first purpose has been satisfied: 7677 paid its outstanding franchise taxes. The third purpose is inapplicable because there is no evidence that 7677 had other outstanding bills that it incurred after forfeiture. 7677 and its officers did not enter into contracts or commit torts after the franchise tax became delinquent. There were no post-forfeiture "bad acts." On the contrary, 7677 cured its failure to pay its franchise taxes.

The second purpose is likewise inapplicable because the Hovels were no longer in a contractual relationship with 7677 at the time it forfeited its corporate status; the construction of their home had long before been completed. This is not a

---

[18]    *Schwab*, 198 S.W.2d at 81.

[19]    *Rossmann*, 455 S.W.3d at 802 (quoting *PACCAR Fin. Corp. v. Potter*, 239 S.W.3d 879, 883 (Tex. App.—Dallas 2007, no pet.)).

28

situation in which individuals are interacting with a corporation without realizing that it had forfeited its corporate privileges.

The Hovels argue, "If this Court were to adopt Batzri's proposed interpretation of the statute, unscrupulous investors would have an incentive to undercapitalize their businesses . . . and then default on their franchise tax obligations in the event that the business becomes potentially liable . . . ." But neither the text of the statute nor any legislative history provided by the parties suggests that the statute was intended to protect creditors[20] from a defunct corporation's much later failure to follow the procedures for winding down its affairs and filing a certificate of termination.[21]

---

[20] There is no basis for concluding that Section 171.255 was enacted to provide a remedy to a creditor of the corporation when none would otherwise exist. The officers and directors of a defunct corporation may relieve themselves of personal liability for any debts by formally winding up the corporation's affairs. *See* TEX. BUS. ORGS. CODE ANN. §§ 11.051; 21.501, *et seq.* (West 2012). The Hovels have not identified any authority holding that personal liability under the Tax Code is designed not only to create an incentive to pay the outstanding tax but also to provide a remedy to creditors if the actions are cast as "culpable" or "wrongful."

[21] Among those steps, a corporation must "send a written notice of the winding up to each known claimant against the [corporation]," TEX. BUS. ORGS. CODE ANN. § 11.052(a)(2) (West 2011), and, to the extent that it has sufficient assets, "apply and distribute its property to discharge, or make adequate provision for the discharge of all of the [corporation]'s liabilities and obligations." *Id.* §11.053; *see Burnett v. Chase Oil & Gas, Inc.*, 700 S.W.2d 737, 739–41 (Tex. App.—Tyler 1985, no writ) (holding that corporation could not be liquidated and dissolved under then-existing Texas Business Corporation Act before making provision "for satisfaction of the obligation of pending unliquidated lawsuits" because "satisfaction of creditors before distribution of assets" is "a fundamental equitable principle governing corporate liquidation and dissolution" and narrow

29

We reject the Hovels' argument for two reasons. First, the Hovels' issue is one of statutory interpretation. Second, we do not share the Hovels' alarm. Undercapitalization is a risk inherent in any contractual relationship with a limited-liability entity. The Hovels presumably were aware of this risk before entering into a business relationship with 7677, a limited liability company. If, as the Hovels claim, Batzri fraudulently transferred corporate assets that were available when 7677 ceased to do business, they could have continued with that claim. Texas law also offers other safeguards against self-dealing, such as piercing the corporate veil, the denuding theory, and the Texas Uniform Fraudulent Transfer Act. *See* TEX. BUS. & COM. CODE ANN. § 24.005 (West 2015) (transfers intended to hinder,

interpretation of statutory phrase "'debts, obligations and liabilities' limiting its meaning to only liquidated debt is repugnant to the . . . mandate of liquidation before final dissolution").

Contract creditors may also seek to pierce the corporate veil under Sections 21.223–.225 of the Business Organizations Code. TEX. BUS. ORGS. CODE ANN. §§ 21.223–.225 (West 2015). Tort creditors may seek to pierce the corporate veil under the common law. *See SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 451 (Tex. 2008) (corporate form may be disregarded when it "has been used as part of a basically unfair device to achieve an inequitable result," such as "when the corporate structure has been abused to perpetrate a fraud, evade an existing obligation, achieve or perpetrate a monopoly, circumvent a statute, protect a crime, or justify wrong," including alter ego doctrine) (internal quotation marks omitted); *but see Target Strike, Inc. v. Marston & Marston, Inc.*, No. SA-10-CV-0188-OLG NN, 2011 WL 1486568, at *2 (W.D. Tex. Apr. 19, 2011), *aff'd*, 524 Fed. Appx. 939 (5th Cir. 2013) (stating that under Section 21.223 corporate shareholder is held liable for "the corporation's contractual obligations or matters relating to or arising from the obligations" and therefore granting summary judgment on tort claims underlying piercing-corporate-veil claims). The Hovels did not seek relief under any of these statutes.

delay, or defraud creditor are fraudulent); *Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 509 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) (piercing corporate veil when owner and directors liquidated assets of corporate defendant and ceased paying franchise tax in attempt to make corporation judgment-proof); *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986) (recognizing denuding theory as doctrine for disregarding corporate fiction); *Tex. Sand Co. v. Shield*, 381 S.W.2d 48, 52 (Tex. 1964) (transfer of assets while lawsuits are pending is "a sign of fraud"); *cf. In re Antone's Records, Inc.*, 445 B.R. 758, 785 (Bankr. W.D. Tex. 2011) ("undercapitalization alone will not support an action for piercing the veil."). The dissent cites no authority for its statement that a corporation that forfeits its corporate status for failure to pay franchise taxes is "shorn of" any subsequent judgment debt. Dissent, slip op. at 6. The judgment debt remains and efforts to collect on that debt may proceed. The only issue here is whether the individual officers and directors may *also* be held liable for the entity's debt.

### Response to Dissent

A comparison of our opinion and that of the dissent shows that the Section 171.255 cases can be reconciled in two very different ways. In our view, the outcomes are generally compatible if viewed chronologically in recognition of when the Legislature narrowly defined "debt" and then did away with that definition. The outcomes, likewise, are generally compatible when we distinguish

31

between claims arising from pre-forfeiture contracts—whether they be expressed as purely contract claims or a mixture of contract, tort, and statutory claims—and other claims that do not arise from a pre-forfeiture contractual relationship between the parties.

In the dissent's view, the dividing line between when an officer or director of a forfeited entity will be held liable and when he will not has always been located at the point that his conduct might be considered "culpable" or "wrongful." If the debt was "lawfully created in the exercise of corporate officers' duties before forfeiture," according to the dissent, the officer or director escapes individual liability. If, on the other hand, the debt results from "wrongful acts," "either before or after forfeiture," for which the officer or director is viewed as "culpable," there will be post-forfeiture individual liability. Dissent, slip op. at 23–26, 53.

We believe the dissent's definitions of "wrongful act" and "culpability" are different than the meanings assigned to those terms in the case law. *See e.g.*, *Rossmann*, 455 S.W.3d at 802 ("Section 171.255 is intended to hold those directors and officers liable who 'have abused the corporate privilege by continuing to create and incur debts after the franchise tax is delinquent (ultimately leading to forfeiture of those privileges) and are, therefore, culpable.'") (quoting *PACCAR Fin. Corp. v. Potter*, 239 S.W.3d 879, 883 (Tex. App.—Dallas 2007, no pet.) (some internal quotation marks omitted).

32

Moreover, the dissent's litmus test of whether a business action should be considered "wrongful" presents a difficult question. *Cf. generally Peevyhouse v. Garland Coal & Mining Co.*, 382 P.2d 109, 113 (Okla. 1962) (discussing relative economic benefits in breach-of-contract damages analysis, which is conceptually similar to concept of "efficient breach") *and* Avery Katz, *Virtue Ethics and Efficient Breach*, 45 SUFFOLK U. L. REV. 777, 777–78 (2012) (discussing *Peevyhouse* case and concept of efficient breach, described as "the idea that a contracting party should be encouraged to breach a contract" in certain circumstances). It also creates uncertainty for those possibly subject to liability.

We submit that use of the tem "wrongful," which can be traced back to the foundational post-forfeiture individual liability case, *Schwab*, was not a call to judge behavior as "culpable" (or not) in a moral or tortious sense. Instead, it was attached to the concept of knowingly entering into a contract in the name of an entity with full appreciation of the fact that the entity no longer held its corporate privileges due to failure to pay franchise taxes. *Schwab* states, "It thus seems obvious that the liability imposed under the statute is only for debts contracted after the forfeiture of the right to do business . . . ." 198 S.W.2d at 81. Further, "[t]he cases holding the officers of a corporation liable . . . were with respect to transactions arising subsequent to the forfeiture . . . , and even then they are not liable unless the new indebtedness was incurred with their knowledge, approval

and consent." *Id.* These statements led to the pronouncement, "The statute was meant to prevent wrongful acts of culpable officers of a corporation, and was for the protection of the public and particularly those dealing with the corporation," meaning unwittingly dealing with a forfeited corporation. *Id.* It appears our very different readings of *Schwab* have led to our different perspectives on this entire line of cases.

A second major difference between our opinion and that of the dissent is the application of the rule of strict construction. The dissent disagrees that the rule of strict construction should be applied because "neither *Schwab* nor *Curry* characterizes section 171.255 as a penal, or *criminal*, statute as opposed to a civil one, or as an *ambiguous* statute to be construed *in favor of culpable defendants*." Dissent, slip op. at 31. But the Texas Supreme Court requires that we apply the rule of strict construction to a *penal* civil statute. *See, e.g.*, *City of Houston v. Jackson*, 192 S.W.3d 764, 770 (Tex. 2006) ("we have consistently held that penal statutes should be strictly construed"); *see also* Andrew R. Roberson & Roger J. Jones, *Lenity and Strict Construction—Overlooked Tools of Construction?*, 144 TAX NOTES 247, 248 (2014) (noting that "rule of lenity has been applied in the civil tax context, although its application has not been widespread or consistent").

And our court recently did so in *Willis*,[22] an opinion the dissent dismisses as similarly "incorrect." Dissent, slip op. at 51. Applying the rule of strict construction does not require "'that the statute shall be stintingly or even narrowly construed, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used.'" *Serv. Emps. Intern. Union Local 5 v. Prof'l Janitorial Serv. of Houston, Inc.*, 415 S.W.3d 387, 393 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (quoting *Jennings v. WallBuilder Presentations, Inc. ex rel. Barton*, 378 S.W.3d 519, 523 (Tex. App.—Fort Worth 2012, no pet.), which quoted NORMAN J. SINGER & J.D. SHAMBIE SINGER, 3 STATUTES AND STATUTORY CONSTRUCTION § 58:2, at 110 (7th ed. 2008)). Thus, under the rule of strict construction, an appellate court must, like we do here, interpret a statute to have the narrowest application, even if that means adopting a broader definition of a particular term in the statute.

## Conclusion

Businesses frequently fail and close their doors. When they do so, they should follow the corporate formalities for closing the business and pay outstanding franchise taxes. But the failure to pay those taxes does not open the door to liability that may be far out of proportion to the unpaid taxes—here over

---

[22] *Willis*, 471 S.W.3d at 33 (stating that "we are obliged to interpret section 171.255 and its statutory predecessors as the Supreme Court and this court have, with the recognition that the statute is 'penal in nature,' and therefore must be 'strictly construed' to protect individuals against whom liability is sought.").

$2 million—unless Section 171.255 makes clear that such a result will follow. It does not. Perhaps there are compelling arguments for holding officers and directors of defunct corporations personally liable, but those policy decisions are not ours to make. Instead, we apply the rules of statutory construction. Because this penal statute must be strictly construed and may not be read to penalize more than is indicated by its terms, we conclude that individual liability is not statutorily authorized under these facts.

When the Hovels contracted with 7677, it was a corporate entity in good standing. The Hovels necessarily intended to look to it, and not to the individual owner, to perform the contract. They were not barred from seeking relief from Batzri for any individual wrongdoing by him because tortfeasors are always liable for their own torts. But they are not able to impose individual liability based solely on the fortuitous timing of the default judgment when the contract, breach, and any bad acts all occurred pre-forfeiture.

### An Issue We Do Not Reach: Limiting "Debt" to Contractual Debts

There is another approach consistent with the rule of strict construction that would also favor the party against whom the penalty is sought: construe the word "debt" as limited to contractual debts. In *Rogers*, which involved contract and tort claims that led to a post-forfeiture judgment held to relate back to the pre-forfeiture agreement, the Dallas court of appeals refused to reach this issue:

36

> Our holding in this respect should not be taken as favoring a construction of Section 171.255 which would impose individual liability for purely tortious acts committed by a corporation or its agents before forfeiture but reduced to debt after forfeiture. We do not consider this question to be presented by the facts of this case and, therefore, expressly reserve opinion on the question.

*Rogers*, 696 S.W.2d at 677–78. We also do not reach this issue. This case does not present a factual scenario in which the plaintiff and entity-defendant are contractual strangers with only tort claims being asserted. Thus, we have not decided, and expressly leave open for future determination, whether purely non-contractual claims, such as statutory violations and tort claims between contractual strangers, can lead to liability under Section 171.255 at all. *Cf. In re Trammell*, 246 S.W.3d 815, 822 (Tex. App.—Dallas 2008, orig. proceeding) ("[S]ection 171.255 does not apply to involuntary debts like tort judgments."); *Williams v. Adams*, 74 S.W.3d 437, 441 (Tex. App.—Corpus Christi 2002, pet. denied) ("[T]he language of its exception to liability indicates that section 171.255 was not intended to apply to judgment debts predicated on negligence liability.").

### Disposition

Having concluded that the debt was not created or incurred post-forfeiture, we overrule the Hovels' first issue. As a result, the Hovels' second issue, addressing whether their attempt to hold Batzri personally liable was a compulsory counterclaim, is moot, and we do not reach it. The judgment of the trial court is affirmed.

                                        Harvey Brown
                                        Justice

Panel consists of Justices Keyes, Higley, and Brown.

Keyes, J., dissenting.