**Opinion issued July 11, 2019**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-18-00324-CV

_____

## IN THE ESTATE OF ROBERT JERRY BRAZDA, DECEASED

On Appeal from the Probate Court No. 2
Harris County, Texas
Trial Court Case No. 413,348

## O P I N I O N

This is an appeal from a probate court in an estate administration. The trial court ordered the dependent administrator to make a partial distribution of estate property to two heirs. The court later found the administrator guilty of neglecting to timely distribute the property and ordered the administrator to pay one of the

heirs[1] damages for the neglect.[2] The administrator moved for reconsideration of the damages order, the trial court stated during a hearing on the motion that it would reconsider the damages order, and it later entered written orders reconsidering and removing the personal liability against the administrator.

In a single issue, the complaining heir contends that the trial court lacked jurisdiction to enter the orders reconsidering and removing the damages against the administrator because the original order awarding the damages was final and appealable in its own right and because the trial court lost plenary power over that order before the time that it entered the written reconsideration orders. We agree with the heir and vacate and remand.

## Background

Appellant Brooks Brazda ("Brazda") is one of the heirs of Robert Jerry Brazda. Appellee Keith Morris is the dependent administrator of Robert Jerry Brazda's estate (the "Administrator").

The Administrator applied to the probate court handling the estate administration for an order for a partial distribution of estate property. The Administrator sought to distribute $244,562.34 from a Vanguard account owned

---

[1]    Only one of the two heirs, Brooks Brazda, moved for damages against the administrator for neglecting to make the partial distribution timely.

[2]    *See* TEX. EST. CODE § 360.301.

2

by the estate, to be split between Brazda and his brother. On March 30, 2017, the court ordered the requested partial distribution.

Afterward, the Administrator prepared paperwork for Vanguard to change the ownership status of the account, seeking to avoid a taxable event on the distribution. Some time passed. By September 2017, the Administrator had not yet made the distribution ordered by the March 30, 2017 order. So Brazda's counsel sent a demand letter to the Administrator, seeking an immediate distribution. Twelve days later, the distribution still had not been made, so Brazda applied for a show-cause order and for relief under Estates Code section 360.301 for the Administrator's alleged neglect in failing to make the distribution timely. The court entered the show-cause order and set Brazda's application for relief under Section 360.301 for a hearing on October 24, 2017. The Administrator was served with citation for the hearing, informing him that it would take place on October 24.

The probate court held a hearing on Brazda's application, but the Administrator did not appear. The next day, the Administrator responded to Brazda's application. However, on October 31, 2017, the court entered an order (1) requiring the Administrator to distribute immediately the funds from the Vanguard account previously ordered distributed and (2) holding him personally liable under Section 360.301 (the "October 31, 2017 Order"). Later that day, the

Administrator moved for reconsideration of the October 31, 2017 Order, requesting that the court "modify" the order.

Then, on November 14, 2017, the court held a hearing on the motion to reconsider. After announcements of counsel, the hearing began:

> [Counsel for the Administrator]: Your Honor, this is our motion to reconsider the granting of a partial distribution of the Estate of Robert Jerry Brazda. I know the judge had signed the order. I know that we missed the show-cause hearing. I wanted to bring it to the Court's attention because I wasn't sure if the Court saw it before he signed the order on October 31st the response that was filed on October 25th, 2017. I don't believe this was ever delivered to the Court. It was filed after the—at the same time of the hearing or around the hearing. And so the purpose of the motion to reconsider is to get in front of the Court the actions taken by [the Administrator] in an attempt to distribute the—
>
> The Court: *What I'm going to do is grant the motion to reconsider and set it for hearing so I can hear testimony.* I only heard testimony from [Brazda], didn't hear from—but rather than doing it based on things that are filed, could I have some evidence? *So I'll grant the motion for reconsideration and come and set it for hearing so we can hear what's going on.*

(Emphases added.) The trial court, however, did not then enter any written order reconsidering or modifying the October 31, 2017 Order awarding damages.

In January 2018, the Administrator supplemented his earlier application for a partial distribution to notify the court that the partial distribution ordered to be made to Brazda and his brother was made in December 2017.

On March 15, 2018, Brazda filed a contract action in the suit. He sued Suretec Insurance Company on the surety bond it had issued for the

4

Administrator's administration of the estate. The contract claim was based solely on the Administrator's Section 360.301 liability under the October 31, 2017 Order and sought damages accrued through the date of distribution—$47,300.33.

On March 26, 2018, the Administrator filed a reply in support of his motion to reconsider and requested for the first time that Brazda's counsel be sanctioned under Rule of Civil Procedure 13 for filing an allegedly groundless lawsuit against Suretec Insurance despite the trial court's earlier oral statements that it had requested rehearing of the issue of Section 360.301 damages.

Then, on March 27, 2018, the probate court held a hearing on the motion to reconsider the October 31, 2017 Order. Later that day, the court entered two orders (the "March 27, 2018 Orders"). The first was styled an "Order Granting Motion to Reconsider" and said: "On this day, the Court considered the Motion to Reconsider the [October 31, 2017 Order] brought by Respondent, Keith Morris, requesting that the Court modify the [October 31, 2017 Order] to remove the personal liability. IT IS ORDERED that the Motion to Reconsider is Granted." The second was styled an "Order on Partial Distribution and Damages Pursuant to Texas Estates Code §360.301 and Request for Sanctions Under Tex. R. Civ. Pro. §13" and said:

> On this day, the Court considered the [October 31, 2017 Order] filed by Brooks Brazda and Request for Sanctions under Tex. R. Civ. Pro. §13. IT IS ORDERED that the [October 31, 2017 Order] filed by Brooks Brazda is hereby DENIED. The Court ORDERS execution to issue including such writs and processes as may be necessary in the enforcement and collection of this ORDER.

The order also included stricken-through text related to the Administrator's request for sanctions against Brazda's counsel, indicating that no sanctions were awarded.[3] Brazda then noticed this appeal of the March 27, 2018 Orders. This table summarizes the above-recounted events:

| Date | Event |
|---|---|
| Mar. 7, 2017 | The Administrator pleads for a partial distribution. |
| Mar. 23, 2017 | The Administrator amends his pleading requesting a partial distribution. |
| Mar. 30, 2017 | The trial court orders the partial distribution. |
| Sept. 26, 2017 | Brazda applies for the show-cause order. |
| Oct. 2, 2017 | The trial court orders the Administrator to show cause for failure to timely distribute. |
| Oct. 24, 2017 | The hearing on the show-cause request takes place, but the Administrator does not appear. |
| Oct. 25, 2017 | The Administrator responds to the show-cause application. |
| Oct. 31, 2017 | The trial court enters the October 31, 2017 Order. |
| Oct. 31, 2017 | The Administrator moves for reconsideration. |
| Nov. 14, 2017 | An oral hearing on the motion to reconsider takes place. |
| Jan. 3, 2018 | The Administrator notifies the court of the December 2017 distribution. |
| Mar. 15, 2018 | Brazda sues the Administrator's surety. |
| Mar. 27, 2018 | An oral hearing on the motion to reconsider takes place. |
| Mar. 27, 2018 | The trial court enters the March 27, 2018 Orders. |
| Apr. 24, 2018 | Brazda notices this appeal. |

---

[3] Our opinion treats the March 27, 2018 Orders as a single unit. The parties do not argue otherwise. Therefore, the analysis that follows should not be read to apply to only one or the other of the two orders in the March 27, 2018 Orders. The analysis considers them an undivided whole.

**Appellate Jurisdiction and Finality of Orders in
Estate-Administration Proceedings**

Brazda's sole issue implicates our jurisdiction over this appeal. He contends that the October 31, 2017 Order was a final order in its own right, such that the trial court had lost the plenary power to reconsider that order or to enter any further orders inconsistent with that order before the March 27, 2018 Orders were entered. In response, the Administrator argues that the October 31, 2017 Order is interlocutory and that the trial court therefore retained plenary power to reconsider it at the time of the March 27, 2018 Orders. The Administrator also argues that the March 27, 2018 Orders are interlocutory and that we therefore lack jurisdiction over this appeal. We will first address whether the March 27, 2018 Orders were final orders because that issue would be determinative our jurisdiction. *See, e.g.*, *Freedom Commc'ns, Inc. v. Coronado*, 372 S.W.3d 621, 623–24 (Tex. 2012); *Harris v. Taylor*, No. 01-15-00925-CV, 2016 WL 4055688, at *3 (Tex. App.— Houston [1st Dist.] July 28, 2016, no pet.) (mem. op.); *Churchill v. Mayo*, 224 S.W.3d 340, 344 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).

## I.    Standard of review and applicable law

It is a party's timely filed notice of appeal that invokes our appellate jurisdiction. *See* TEX. R. APP. P. 25.1, 26.1; *Alexander Dubose Jefferson & Townsend LLP v. Chevron Phillips Chem. Co.*, 540 S.W.3d 577, 581–82 & n.27 (Tex. 2018) (per curiam). Unless specifically authorized by statute, we lack

jurisdiction when a party notices an appeal from an interlocutory order or judgment. *See Bison Bldg. Materials, Ltd. v. Aldridge*, 422 S.W.3d 582, 585 (Tex. 2012).

Said another way, parties generally may appeal only from final judgments. *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 195 & n.12 (Tex. 2001). However, appeals from probate courts, which adjudicate estate administrations, involve an exception to the final-judgment rule because multiple final judgments or orders may be rendered on discrete issues before an entire probate-court proceeding is final. *See Trevino v. Reese*, No. 01-10-00717-CV, 2011 WL 2436523, at \*2 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.); *Young v. First Cmty. Bank, N.A.*, 222 S.W.3d 454, 456 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

There are two categories of probate-court orders that are considered final, and therefore appealable, even if not every party and issue in the entire proceeding is disposed of by the order. First, statutes may declare certain orders to be final, appealable orders: "If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls." *See Brittingham–Sada de Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006); *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex.

1995); *Young*, 222 S.W.3d at 457. Second, orders that dispose of all parties and issues "in a particular phase of the proceedings" are final, appealable orders:

> Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory. . . . [U]nder *Crowson*, the trial court's order was interlocutory because it did not dispose of all parties or issues in a particular phase of the proceedings.

*Brittingham–Sada de Ayala*, 193 S.W.3d at 578–79; *accord Crowson*, 897 S.W.2d at 783; *Young*, 222 S.W.3d at 457.

Our primary objective in interpreting statutes is to give effect to the Legislature's intent. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). The plain meaning of the statute's text is the best expression of legislative intent unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results. *Id.*; *see also Valdez v. Hollenbeck*, 465 S.W.3d 217, 227 (Tex. 2015) ("[W]e construe the words of the statute according to their plain meaning and within their contextual environs."). In interpreting a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage. *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006).

When we must interpret a civil statute that is penal in nature, we are to "apply the rule of strict construction." *Hovel v. Batzri*, 490 S.W.3d 132, 148 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). This rule implicates the breadth or narrowness of the penal civil statute's application:

Applying the rule of strict construction does not require that the statute shall be stintingly or even narrowly construed, but it means that everything shall be excluded from its operation which does not clearly come within the scope of the language used. Thus, under the rule of strict construction, an appellate court must, like we do here, interpret a statute to have the narrowest application, even if that means adopting a broader definition of a particular term in the statute.

*Id.* at 148–49 (internal quotations and citations omitted) (quoting *SEIU Local 5 v. Prof'l Janitorial Serv. of Houston, Inc.*, 415 S.W.3d 387, 393 (Tex. App.—Houston [1st Dist.] 2013, pet. denied)). This has long been the understanding of that rule. *See, e.g.*, *Wood Cty. v. Cate*, 12 S.W. 535, 536 (Tex. 1889) ("To give that statute such enlarged application would violate established rules for the construction of statutes penal in their nature.").

Brazda noticed this appeal based only on the March 27, 2018 Orders. The Administrator has not filed his own notice of appeal or cross-notice. Therefore, we must first determine whether the March 27, 2018 Orders were final or interlocutory because, if interlocutory, then we lack jurisdiction over this appeal. *See* TEX. R. APP. P. 25.1, 26.1; *Alexander Dubose Jefferson & Townsend*, 540 S.W.3d at 581–82 & n.27; *Bison Bldg. Materials*, 422 S.W.3d at 585; *Lehmann*, 39 S.W.3d at 195 & n.12.

## II. The March 27, 2018 Orders were final because the plain language of Section 360.301 requires that result.

Under the special rules for probate-court orders' appealability, the March 27, 2018 Orders were final only if they meet one of these two conditions: (1) there is

10

an express statute declaring the phase of the proceeding that the orders ended to be final and appealable or (2) the orders disposed of all parties and issues in a particular phase of the proceedings. *See Brittingham–Sada de Ayala*, 193 S.W.3d at 578–79; *Crowson*, 897 S.W.2d at 783; *Young*, 222 S.W.3d at 457.

## A.    Brazda's argument

Brazda raises an argument implicating the first, statute-focused condition. In arguing that the October 31, 2017 Order was final, he argues that orders awarding damages under Section 360.301 are per se final, appealable orders because of that statute's language. That statute provides:

> (a)    If an executor or administrator neglects, when demanded, to deliver a portion of an estate ordered to be delivered to a person entitled to that portion, the person may file with the court clerk a written complaint alleging:

>> (1)    the fact of the neglect;

>> (2)    the date of the person's demand; and

>> (3)    other relevant facts.

> (b)    On the filing of a complaint under Subsection (a), the court clerk shall issue a citation to be served personally on the executor or administrator. The citation must:

>> (1)    apprise the executor or administrator of the complaint; and

>> (2)    cite the executor or administrator to appear before the court and answer, if the executor or administrator desires, at the time designated in the citation.

> (c)    If at the hearing the court finds that the citation was properly served and returned and that the executor or administrator is

guilty of the neglect alleged, the court shall enter an order to that effect.

    (d)    An executor or administrator found guilty under Subsection (c) is liable to the complainant for damages at the rate of 10 percent of the amount or the appraised value of the portion of the estate neglectfully withheld, per month, for each month or fraction of a month that the portion is or has been neglectfully withheld after the date of demand. Damages under this subsection may be recovered in any court of competent jurisdiction.

Tex. Est. Code § 360.301.

Brazda argues that the October 31, 2017 Order was final under either of two alternatives. First, he says that Section 360.301(d) allows a damages order entered by a probate court to be enforced in any other "court of competent jurisdiction." He argues that such an order can be enforced in another court only if the order is final on its own, and he cites *In re Elmer*, 158 S.W.3d 603 (Tex. App.—San Antonio 2005, orig. proceeding), for its statement that, "to enforce a judgment, the judgment must be final." *Id.* at 605 (citing *Hood v. Amarillo Nat'l Bank*, 815 S.W.2d 545, 548 (Tex. 1991) (per curiam)). The Supreme Court of Texas, in *Hood*, said that "a writ of execution will not issue until after a final and appealable judgment is signed." *Hood*, 815 S.W.2d at 548; *see also In re Burlington Coat Factory Warehouse of McAllen, Inc.*, 167 S.W.3d 827, 831 (Tex. 2005) (orig. proceeding) (execution cannot issue on non-final judgment); *Edlund v. Bounds*, 842 S.W.2d 719, 732 (Tex. App.—Dallas 1992, writ denied) (same), *cited in*

12

*Heslip v. Baber*, No. 01-96-00704-CV, 1997 WL 760537, at *5 (Tex. App.—Houston [1st Dist.] Dec. 11, 1997, pet. denied) (not designated for publication).

Second, and in the alternative, Brazda says that Section 360.301(d) may be interpreted as a venue provision allowing an action for damages under the statute to be filed in the first instance not only in the probate court that is handling the underlying estate administration but also "in any court of competent jurisdiction." Under this interpretation, he says, if a complainant may initiate an action in another court seeking damages under Section 360.301, then an order by that court awarding damages necessarily must be a final order because such an order will have adjudicated the entire proceeding.

A necessary implication of his arguments from Section 360.301, according to Brazda, is that the March 27, 2018 Orders are also final because they adjudicated his claim for Section 360.301 damages, though not in his favor.

## B. The Administrator's responses

The Administrator offers two arguments in response: that Section 360.301 "does not contain language that (1) clearly shows the Texas Legislature's intent that it create a final, appealable judgment, or (2) allows it to transform an interlocutory order into a final judgment simply because it is included as a basis for relief."

Under the first argument, he contrasts Section 360.301 with Estates Code section 202.202, which provides that "[t]he judgment in a proceeding to declare heirship is a final judgment" and that the judgment, "[a]t the request of an interested person, . . . may be appealed or reviewed within the same time limits and in the same manner as other judgments in probate matters." TEX. EST. CODE § 202.202(a)–(b). This statute's similarly worded predecessor, former Probate Code section 55(a), is the statute that the Supreme Court of Texas was referring to in *Crowson* when it said:

> [T]he *Wright* opinion recognized that a special provision, TEX. PROBATE CODE ANN. § 55(a), expressly provided the heirship proceeding judgment "shall be a final judgment."
>
> . . . .
>
> If there is an express statute, *such as the one for the complete heirship judgment*, declaring the phase of the probate proceedings to be final and appealable, that statute controls.

897 S.W.2d at 782–83 (internal citation omitted; emphasis added); *see also* Act of May 5, 1971, 62nd Leg., R.S., ch. 173, § 4, 1971 TEX. GEN. LAWS 967, 973 (codified at now-repealed TEX. PROB. CODE § 55(a)) (amended 1979), *repealed and replaced in nonsubstantive recodification by* Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 1, 10(a), 2009 TEX. GEN. LAWS 1512, 1584, 1731 (current version at TEX. EST. CODE § 202.202). The Court in *Crowson* held that a partial summary judgment resolving one party's heirship claim was interlocutory largely because the partial summary judgment did not also resolve all of the other parties'

14

competing heirship claims, which claims remained pending. *See* 897 S.W.2d at 782–83.

The Administrator contrasts the express references to finality and to the availability of an appeal in Section 202.202 with the lack of any similar references in Section 360.301. The Administrator contends that the language of Section 360.301(d) merely "establishes a damages model" for the liability described by Section 360.301(c) and that nothing else in the statute indicates that a court's imposition of the liability contemplated by the statute "constitutes a final appealable adjudication."

Finally under his first, statutory-text response, the Administrator says that Section 360.301, like its similarly worded predecessors, "is penal in nature" and therefore "must be strictly construed." He cites both *Bilek v. Tupa*, 549 S.W.2d 217, 222 (Tex. Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.), and *Bevill v. Young*, 167 S.W.2d 573, 574 (Tex. Civ. App.—Dallas 1942, writ ref'd w.o.m.), for this proposition. He says that strictly construing Section 360.301 "forbids grafting on an element of finality that the Legislature did not itself include" in the statute.

Under his second counter-argument, the Administrator says that, even if the March 27, 2018 Orders' adjudication of Brazda's Section 360.301 damages claim could be construed as a final order, the orders also addressed only a partial distribution of the estate's assets and did not also require a distribution of the rest

of the estate's assets. He says that distributing the rest of the estate's assets was an ongoing concern for the probate court, so an order for a partial distribution must necessarily be interlocutory, which prevents the March 27, 2018 Orders, as a whole, from being final.

**C.    Analysis**

We must interpret Section 360.301 to give effect to all of its terms. *See Shumake*, 199 S.W.3d at 287. Doing so, the statute authorizes the filing of a cause of action, after demand, against an administrator guilty of neglecting to deliver estate property that has been ordered to be delivered to a person interested in the estate. Importantly, because a complainant under the statute may call upon "any court of competent jurisdiction" to assist in the recovery of damages—*see* TEX. EST. CODE § 360.301(d)—the resolution of a claim under the statute, whether in the complainant's favor or not, must constitute a final order for either one of the two reasons that Brazda advances—either that Section 360.301(d) authorizes simply execution of the probate court's award of damages in any court of competent jurisdiction or that the statute establishes venue for such an action to be filed in the first place in another court besides the probate court that is handling the administration of the estate. We need not decide which one it is. But the statute's reference to recovery of some sort in another court *must* mean that an order awarding or denying Section 360.301 damages is final.

Consider the example in which an estate administration is ongoing, the administrator neglects to deliver property ordered to be delivered, and a complainant files his or her cause of action for Section 360.301 damages in the probate court handling the administration. If the probate court awards damages, the availability of recourse to another "court of competent jurisdiction" must mean that there is some work for such a court to do. If that other court could not assist the complainant with execution on the damages awarded by the probate court until the entire administration of the estate in the probate court is final, then the complainant might as well seek execution on the award in the probate court itself, at the appropriate time. After all, the administrator against whom the award is made is already before that probate court. It would seem a waste of time and resources to seek execution in any other court if the probate court itself, after the entire administration is final, may afford the successful complainant all the relief contemplated by the statute. If the probate court's damages award is interlocutory, then, there is no work for the other "court of competent jurisdiction" to do, and the statutory text is mere surplusage—a conclusion that we must avoid. *See Shumake*, 199 S.W.3d at 287.

Alternatively, if, as the statutory language seems to suggest, a complainant may initiate a claim for Section 360.301 damages in the first instance in another court of competent jurisdiction, then that court's resolution of the claim must be a

17

final, appealable order, for it will have resolved the entirety of the proceeding before it.

This plain-language reading of the statute disposes of the Administrator's first statutory-text counter-argument. Though the Administrator is correct that Section 360.301 does not include the kind of express finality language that Section 202.202 includes, he is incorrect that Section 360.301(d) is therefore merely a damages model. The subsection includes the damages model *and also* the statement that "any court of competent jurisdiction" may assist the successful complainant in recovering damages. This statement must be given some effect, and interpreting an award or denial of damages under Section 360.301 to be interlocutory strips the statement of any effect.

Neither Section 360.301 nor its predecessors have often been interpreted in Texas appellate opinions for purposes like analyzing order finality, but the available precedents support our reading of the statute. Long ago, in a Commission of Appeals opinion adopted by the Supreme Court of Texas, the court held that an action like Brazda's application for damages could "be brought before the administrator was discharged by the probate court" in an entirely different county from the one whose probate court was handling the administration of the estate. *See Stewart v. Morrison*, 17 S.W. 15, 16–17 (Tex. [Comm'n Op.] 1891). Morrison was an heir to the decedent whose estate Stewart was administering; the probate

court handling the administration was in McMullen County; but Morrison sued Stewart on his bond in a La Salle County court for damages for his failure, after demand, to deliver to Morrison property ordered to be delivered to her by the probate court. *Id.* at 16. "The principal question" before the court was, "could the suit on the bond be brought before the administrator was discharged by the probate court?" *Id.* The court held that it could, relying in part on former Revised Statutes article 2127, which dealt with "the failure of an administrator to pay any portion of an estate ordered to be paid or delivered to a distributee after demand" and provided for damages in a complainant's favor for such a failure by an administrator "fixed at 10 per cent. per month on the amount of the share withheld, recoverable by suit in any court having competent jurisdiction." *Id.* at 16–17; *see also Bevill*, 167 S.W.2d at 575 (noting that *Stewart* dealt with predecessor statute relevant to actions like Brazda's).

More recent opinions are similar. In holdings approved by the Supreme Court, the Commission of Appeals held that a complainant like Morrison or Brazda has "a present right of action" under the predecessor statute and that such an action can be brought in "[a] suit in a court of competent jurisdiction," even before the entire estate administration is final. *See Ford v. Wheat*, 36 S.W.2d 712, 713 (Tex. Comm'n App. 1931, holdings approved); *accord Yates v. Yates*, 68 S.W. 708, 709–10 (Tex. Civ. App.—Galveston 1902, no writ) (relying on *Stewart* and reversing

19

trial court because it had sustained administrator's demurrer to heir's suit, which was brought in another court before estate administration was closed and which was for administrator's failure to deliver to heir property that had been ordered delivered); *see also Diaz v. Chinn*, 150 S.W.2d 411, 412 (Tex. Civ. App.—San Antonio 1941, no writ) (noting availability of suits like that in *Stewart*, which are brought in courts other than the probate court "for the purpose of calling an administrator to account for the failure . . . to carry out an order of the probate court"). If such a suit can be brought in another court before the entire estate administration is final, then that other court's grant or denial of the claim for damages must be a final order when entered.

The Administrator's counter-argument from the rule of strict construction is also unavailing. That rule concerns the breadth or narrowness of a penal civil statute's application. *See Hovel*, 490 S.W.3d at 148–49. The Administrator, however, impliedly accepts that Section 360.301 is broad enough to apply to him. The probate court had entered an order directing him to distribute property from the Vanguard account to Brazda and his brother and later found that he had neglected to do so timely. This series of events is in the middle of the zone of events to which Section 360.301 applies, no matter what the outer bounds of that zone may be. The Administrator impliedly accepts this by arguing not that Section 360.301 does not apply to him but only that it should not give rise to final,

appealable orders. And even if the rule of strict construction could be applied in interpreting whether Section 360.301 gives rise to final orders or to interlocutory ones, the rule would probably undermine the Administrator's position here. It would be more protective of estate administrators, not less, to allow them to appeal orders under Section 360.301 more quickly than requiring them to wait for the end of the estate administration would, when, all the while, damages and interest may be accruing continuously. We are therefore unpersuaded by the Administrator's counter-arguments from the statute's text.

Lastly, the Administrator's second counter-argument, that the March 27, 2018 Orders were interlocutory because they contain an interlocutory component even if they also contain a final component, is unavailing too. When an order is "both interlocutory and final, it is ambiguous," and "we must look not only to the order but also to the record to determine the question of finality." *Smith Protective Servs. v. Martin*, 711 S.W.2d 675, 679 (Tex. App.—Dallas 1986, orig. proceeding [leave denied]) (opinion of Guillot, J.) (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971) (orig. proceeding)); *see also id.* at 681–83 (opinion of Howell, J.) (similarly examining the record to determine finality); *id.* at 684 (Akin, J., dissenting) ("I further agree that the order entered was ambiguous as to its finality and that we must consequently look to the *entire* contents of [the] judgment and *record*." (internal quotation omitted; emphases and alteration in

original)).[4] A review of the record here, in light of Section 360.301, supports the conclusion that the March 27, 2018 Orders were final. In effect, the March 27, 2018 Orders took only two actions: (1) they granted reconsideration of the October 31, 2017 Order "to remove the personal liability" of the Administrator, and (2) they denied Brazda's application for damages. Then, the orders conclude with: "The Court ORDERS execution to issue including such writs and processes as may be necessary in the enforcement and collection of this ORDER." This is some indication that the trial court intended for the orders to be final because execution could not issue for an interlocutory order. *See Burlington Coat Factory Warehouse of McAllen*, 167 S.W.3d at 831; *Hood*, 815 S.W.2d at 548; *Elmer*, 158 S.W.3d at 605; *Heslip*, 1997 WL 760537, at *5; *Edlund*, 842 S.W.2d at 732.

In reviewing the relevant portions of the record, the March 27, 2018 Orders resolved the entirety of Brazda's live pleadings. Brazda had applied for a show-cause order against the Administrator and asked for relief under Section 360.301. The March 27, 2018 Orders resolved those requests.[5] All of

---

[4] There was no majority opinion from the panel in *Smith Protective Services*, but all three justices agreed—Justices Guillot and Akin explicitly and Justice Howell implicitly—that resolving whether the subject orders were final or interlocutory should be done by reviewing both the orders and the record.

[5] Because the March 27, 2018 Orders fully resolved the Section 360.301 claim, they necessarily resolved Brazda's contract action too, which was based solely on the Administrator's liability for Section 360.301 damages. *Cf. USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 503 & n.25 (Tex. 2018); *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 921–22

22

Brazda's issues therefore were resolved. The orders did not order any new partial distribution or alter the court's earlier March 2017 order ordering a partial distribution. That earlier order remained intact, and the partial distribution had already been made in December 2017. The March 27, 2018 Orders are therefore missing the interlocutory component that the Administrator ascribes to them. To be sure, the remainder of the estate administration remained pending despite the orders, but the orders resolved all of Brazda's live claims for relief and nothing else. *See White v. Pope*, 664 S.W.2d 105, 106–07 (Tex. App.—Corpus Christi 1983, no writ) (holding probate-court order to be final and appealable because its "commands" to administratrix to liquidate certain estate assets to pay estate's counsel was "conclusive" as to those commands and "[n]o further hearing on these matters is called for," though administratrix claimed that entire estate administration was not yet final); *accord Christensen v. Harkins*, 740 S.W.2d 69, 70–74 (Tex. App.—Fort Worth 1987, no writ). Given the state of the record, we resolve any final-or-interlocutory ambiguity in the March 27, 2018 Orders in favor of finality. We therefore conclude that the March 27, 2018 Orders as an undivided

---

(Tex. 2005) (per curiam); *In re Macy Lynne Quintanilla Tr.*, No. 04-17-00753-CV, 2018 WL 4903068, at *2–3 (Tex. App.—San Antonio Oct. 10, 2018, no pet.) (mem. op.).

whole were final and appealable and that we therefore have jurisdiction over this appeal.[6]

### III.   The October 31, 2017 Order was final for the same reasons.

The result of our analysis is that we have jurisdiction over this appeal because Brazda noticed the appeal from final, appealable orders—the March 27, 2018 Orders. The same analysis leads to the related conclusion that the October 31, 2017 Order was itself final and appealable when entered. It fully resolved all of Brazda's then-live claims[7] by awarding him damages under Section 360.301 and "ORDER[ING] execution to issue including such writs and processes as may be necessary in the enforcement and collection of this Order." The plain language of Section 360.301 allowed Brazda to call upon "any court of competent jurisdiction" to assist him in the recovery of his Section 360.301 damages. The Administrator offers no further argument for why the October 31, 2017 Order should be construed as interlocutory under the statute even if the March 27, 2018 Orders should be construed as final under the statute. His finality arguments apply with

---

[6]   Because of our conclusion from Section 360.301's text, we need not reach the parties' competing alternative arguments over whether, statutes aside, the March 27, 2018 Orders ended "a particular phase of the proceedings," under *Brittingham–Sada de Ayala* and *Crowson. See* TEX. R. CIV. P. 47.1.

[7]   Brazda had not yet filed his contract action against Suretec Insurance.

equal force to both sets of orders. We see no reason to distinguish the October 31, 2017 Order from the analysis laid out above.[8]

Accordingly, we sustain Brazda's sole issue in part: we agree that the October 31, 2017 Order was a final order.

### Reconsideration of Final Order by Oral Statement

This conclusion does not dispose of this appeal, however. Two weeks after the trial court entered the October 31, 2017 Order, it held a hearing on the Administrator's motion to reconsider. During the hearing, the trial court said:

> What I'm going to do is grant the motion to reconsider and set it for hearing so I can hear testimony. I only heard testimony from [Brazda], didn't hear from—but rather than doing it based on things that are filed, could I have some evidence? So I'll grant the motion for reconsideration and come and set it for hearing so we can hear what's going on.

The trial court, however, did not enter any written order reconsidering the October 31, 2017 Order until the March 27, 2018 Orders.

The Administrator treats the trial court's oral statements during the hearing as constituting a grant of reconsideration of the October 31, 2017 Order such that the order was no longer in effect from the time of the oral hearing onward: "The

---

[8]    If anything, the October 31, 2017 Order presents an even stronger case of finality than the March 27, 2018 Orders do because the former actually awarded Brazda some affirmative relief and ordered that execution could issue on the award, all in the context of a statute allowing Brazda to seek recovery of the award "in any court of competent jurisdiction." *See* TEX. EST. CODE § 360.301(d).

trial court held a hearing on November 14, 2017, wherein the trial court granted Administrator's Motion for Reconsideration. . . . On November 14, 2017, the trial court considered the Administrator's motion to reconsider and granted the motion." Advancing two arguments, Brazda disagrees that the oral statements sufficed to undo the October 31, 2017 Order. First, he says that the Administrator's motion to reconsider "was, in effect, a motion for new trial" because the October 31, 2017 Order was a final order. Any grant of reconsideration therefore would be an order granting a new trial, and, according to him, an order granting a new trial must be made in writing before the expiration of 75 days or else the motion is overruled by operation of law. Brazda relies on Rule of Civil Procedure 329b(c), which provides that "[i]n the event an original or amended motion for new trial or a motion to modify, correct or reform a judgment is not determined by written order signed within seventy-five days after the judgment was signed, it shall be considered overruled by operation of law on expiration of that period." Second, he says that the trial court's oral statements were not "a binding ruling" but were merely an expression of "an intention to grant the motion in the future."

A trial court has the "power to grant a new trial or to vacate, modify, correct, or reform the judgment within thirty days after the judgment is signed." TEX. R. CIV. P. 329b(d). And if there is a timely motion for new trial, the trial court then has the "power to grant a new trial or to vacate, modify, correct, or reform the

26

judgment until thirty days after all such timely-filed motions are overruled, either by a written and signed order or by operation of law, whichever occurs first." TEX. R. CIV. P. 329b(e). A similar deadline applies if there is a timely filed "motion to modify, correct, or reform a judgment." *See* TEX. R. CIV. P. 329b(g). Rule 329b's provisions apply with equal force to probate-court orders, or judgments, that are final. *See In re Jacky*, 506 S.W.3d 550, 555–56 (Tex. App.—Houston [1st Dist.] 2016, orig. proceeding); *Ajudani v. Walker*, 232 S.W.3d 219, 223 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

We review issues concerning a trial court's subject-matter jurisdiction de novo. *Gauci v. Gauci*, 471 S.W.3d 899, 901 (Tex. App.—Houston [1st Dist.] 2015, no pet.). After a trial court loses plenary power over a final judgment, it lacks jurisdiction to alter that judgment, save for clarifying the judgment, enforcing it, or correcting errors *nunc pro tunc* in it. *See Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986); *Martin v. Tex. Dep't of Family & Protective Servs.*, 176 S.W.3d 390, 392 (Tex. App.—Houston [1st Dist.] 2004, no pet.).

A judgment or order entered without jurisdiction is void. *See Gauci*, 471 S.W.3d at 901; *Saudi v. Brieven*, 176 S.W.3d 108, 113 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). "[A]ppellate courts do not have jurisdiction to address the merits of appeals from void orders or judgments; rather, they have jurisdiction only to determine that the order or judgment underlying the appeal is void and make

27

appropriate orders based on that determination." *Freedom Commc'ns*, 372 S.W.3d at 623.

This suit's situation is analogous to that of *Faulkner v. Culver*, 851 S.W.2d 187 (Tex. 1993) (orig. proceeding) (per curiam). There, Faulkner received a take-nothing summary judgment in his favor on medical-malpractice claims against him. *Id.* at 188. The plaintiffs then moved "for rehearing of the summary judgment and, in the alternative, . . . for new trial." *Id.* About six weeks later, the trial court "orally vacated the summary judgment . . . and made a[n] entry on the docket sheet to this effect." *Id.* However, the trial court "did not vacate the summary judgment by written order until" about ten months after the motion for rehearing was originally filed. *Id.* The Supreme Court of Texas granted a writ of mandamus in Faulkner's favor, directing the trial court to vacate the written order vacating the summary judgment. *Id.* at 188–89. The trial court's "oral pronouncement and docket entry vacating the summary judgment could not be substituted for a written order required by Rule 329b." *Id.*; *accord In re Bates*, 429 S.W.3d 47, 50–52 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding).

Similarly here, whether the Administrator's motion for reconsideration was a motion for new trial or not, it certainly sought either to vacate, modify, correct, or reform the final and appealable October 31, 2017 Order. Undoing that order therefore should have been done by written order under Rule 329b before the rule

28

operated to deny the motion by operation of law. The March 27, 2018 Orders post-dated even the extended 105-day period allowable under Rule 329b(c)–(g). Therefore, the trial court had lost plenary power over the October 31, 2017 Order before it entered the March 27, 2018 Orders. Because the oral statements at the hearing do not suffice to undo the October 31, 2017 Order, the March 27, 2018 Orders are void for lack of jurisdiction. *See Freedom Commc'ns*, 372 S.W.3d at 623; *Escobar*, 711 S.W.2d at 231; *Gauci*, 471 S.W.3d at 901; *Martin*, 176 S.W.3d at 392; *Saudi*, 176 S.W.3d at 113. Accordingly, we now sustain Brazda's sole issue in its entirety.

## Conclusion

We vacate the March 27, 2018 Orders. We remand for further proceedings consistent with this opinion.


Richard Hightower
Justice

Panel consists of Chief Justice Radack and Justices Higley and Hightower.

29